[No. 3222.]

ISAAC HARTMAN *v.* EDWARD P. REED AND TYLER BEACH, ADMINISTRATOR OF THE ESTATE OF SAMUEL J. CROSBY, DECEASED.

| 50 | 485 |
| 78 | 134 |

| 50 | 485 |
| 129 | 372 |

| 50 | 485 |
| 133 | 224 |

CONVEYANCE OF LAND IN CONSIDERATION OF CONTRACT TO PERFORM SERVICES.—If one conveys to another a tract of land, part of a Mexican grant, in consideration of an agreement by the other to prosecute the claim before the courts for final confirmation, and the grantee fails to fulfill his agreement, the title vests absolutely, and the remedy of the grantor for the breach of the agreement is an action for damages.

STATUTE OF LIMITATIONS.—If the grantee of a Mexican grant conveys an undivided interest in the same, and, after the conveyance is made, holds possession of the whole of the grant, adversely to all the world, for the period required by the Statute of Limitations, the title which he has conveyed is extinguished.

IDEM.—The court does not apply the above principle to a case where a patent from the United States has issued within the period of the statute, if the grantee was entitled to the benefit of the patent.

CONSTRUCTION OF DEED.—If, after the owner of a Mexican grant of land has conveyed an undivided one-third of the same, he retains adverse possession until the title of the grantee is extinguished, and then executes a conveyance to another party of "the interest in said lands or rancho heretofore conveyed" to said grantee, and "all the undivided third part of" the whole tract of land and rancho, the latter conveyance vests in the grantee, not the particular third first conveyed, but an undivided third, without distinguishing which third.

ACTION TO REMOVE CLOUD ON TITLE.—In an action to set aside a deed as a cloud upon the title of the plaintiff, it is not enough that the deed which is sought to be set aside may possibly be a cloud on the plaintiff's title, but it must clearly appear that the claim set up under such deed is, in fact, in hostility to the plaintiff's title.

IDEM.—If the owner of a tract of land conveys an undivided one-third of the same, without designating what third, the grantee cannot maintain an action to remove, as a cloud on his title, a claim set up by another party to a particular undivided third of the tract.

APPEAL from the District Court, Seventeenth Judicial District, County of San Diego.

Augustin Olvera owned the Rancho Cuyamaca, lying in San Diego, under a grant from the Mexican nation. In 1854, he entered into an agreement with Elisha O. Crosby, a practicing attorney, whereby it was agreed that said Crosby was to prosecute his claim for the rancho before the United States

Land Commissioners, and the Courts of the United States, to a final confirmation, and procure a patent therefor. In consideration of such services to be performed Olvera conveyed, by deed of bargain and sale, to Crosby, an undivided one-third of the rancho. Crosby failed to perform his agreement, and Olvera employed other counsel, who procured a confirmation of the claim. At the time of the commencement of this action a patent had not been issued by the United States. On the 16th day of March, 1855, Crosby, the grantee, executed to his brother, Samuel J. Crosby, a quit-claim deed for the undivided one-third conveyed to him by Olvera. No consideration passed for this deed. Samuel J. Crosby died, intestate, on the 29th day of March 1859, and the defendant Reed became the administrator of his estate. In 1858, a judgment had been rendered in the District Court of the County of Santa Clara against Samuel J. Crosby, in favor of Elliott Reed, who assigned the same to defendant Reed. The claim was allowed against the estate. In July, 1860, Reed resigned the office of administrator, and defendant Beach was appointed in his place. In February, 1861, Reed procured an order from the Probate Court for an execution to issue on the Crosby judgment. The execution was issued to the sheriff of San Diego County, and the undivided third conveyed by Olvera to Crosby was sold to defendant Reed. On the 10th day of September, 1862, the sheriff executed to Reed a deed under the sale. On the 28th day of April, 1869, Olvera executed to the plaintiff a deed, the descriptive parts of which are repeated in the opinion. From the 20th day of November, 1859, until his conveyance to Hartman, Olvera was in the adverse possession of the whole rancho, and, after the latter date, Olvera and Hartman were in such adverse possession. This suit was commenced on the 22d day of October, 1869, to have the deed to Crosby and the conveyance to Reed set aside as a cloud upon the plaintiff's undivided one-third of the rancho. The complaint was framed upon the theory that the plaintiff claimed the undivided one-third conveyed by Olvera to Crosby and by the sheriff to Reed, and that, therefore, the deeds to Crosby and Reed were a cloud upon his title. De-

fendant Reed alone answered. The court rendered judgment for the plaintiff, and the defendant appealed.

The other facts are stated in the opinion.

*Houghton & Reynolds, and Wm. Mathews,* for the Appellants.

The deed from Olvera to E. O. Crosby passed the title to the undivided one-third of the premises to the grantee therein. The alleged agreement to perform certain professional services did not amount to a defeasance. (*Vance* v. *Lincoln,* 38 Cal. 586; *Clayton* v. *Walker,* 10 Id. 450; *Galland* v. *Jackman,* 26 Id. 79.)

In order, therefore, for the plaintiff to maintain this action, based upon title, he must deraign title to the identical third claimed by Reed.

He cannot maintain the action upon his possession, for he has none. His possession is the possession of his co-tenant. The possession is held in common, and "their occupation is undivided and neither of them knoweth his own severalty." Therefore no action to quiet adverse claims to one in possession under the 254th section of the Practice Act, can be maintained by one tenant in common as to his undivided interest.

A bill by one tenant in common can only be maintained upon averment of title, without reference to possession, to remove a cloud either *quia timet,* or in aid of an action at law. (*Hager* v. *Shindler,* 29 Cal. 55.) But to sustain it in this aspect of the case, the averment that plaintiff had acquired title to the identical third claimed by Reed must be sustained.

Assuming that the plaintiff could acquire and had acquired a title by disseizin, such title could not be affected by any of the alleged claims of Reed. The title by disseizin extinguishes the true title and creates in the disseizor an independent title. (*Taylor* v. *Horde,* 1 Burr. 119; *Leffingwell* v. *Warren,* 2 Black, 605; *School Directors* v. *Benson,* 31 Me. 384.)

A bill under section 254 of the Practice Act could be maintained by one in possession, to quiet this adverse claim

of title, but not by one out of possession. It is a claim against his possession only. (*Arrington* v. *Liscom,* 34 Cal. 365.)

No title can be acquired by disseizin to an undivided interest in land, unless the disseizor has the exclusive possession of the whole.

One tenant in common having no possession of his undivided share of the land, cannot, from the very nature of the case, acquire a title by disseizin to his undivided portion. He does not claim title to the land possessed by him exclusive of any other right. His claim is not to the land, but only to an interest that is inseparable from the other shares as to possession.

If the deed to Hartman operated as a conveyance it passed a third of the rancho generally, and not any particular third.

*A. Brunson and S. S. Holl,* for the Respondent.

It makes no difference whether or not appellant acquired title under the sale made under section 215 of the Practice Act, if plaintiff subsequent thereto acquired title as against him by the adverse holding set up. The latter title was superior to the former.

It is an elementary doctrine of all the books upon the subject, that a title by adverse possession is of equal dignity to the best paper title. Such title is evidence of fee independent of statute. (Angell on Lim. 1–5.)

By the COURT:

It is satisfactorily shown that, in the year 1854, Olvera, by deed of bargain and sale, conveyed to E. O. Crosby the undivided third of the Rancho Cuyamaca; that the only consideration therefor was the agreement of Crosby to prosecute to a final determination before the Board of Land Commissioners and the courts of the United States, the claim of Olvera to the said rancho, and that Crosby failed to perform his agreement. The title to the undivided third of the rancho vested absolutely in Crosby, and his agreement did not constitute a condition, upon a breach of which

the title would revest in Olvera; but a breach of the agreement only gave Olvera a cause of action for damages. The title to the undivided third of the rancho was conveyed, in 1855, by Crosby to S. J. Crosby, and remained in him until his death, on the 29th of March, 1859.

On the 28th of April, 1869, Olvera executed to the plaintiff a conveyance, by which the former purported to convey to the latter "the interest in said lands or rancho heretofore conveyed as aforesaid to said Elisha O. Crosby, and which is described as follows, to wit: All the undivided one-third part of that tract of land and rancho, in the county of San Diego, called Cuyamaca." The deed recites that Crosby had agreed with Olvera to prosecute his claim to the rancho and procure a patent, in consideration of which Olvera agreed to convey to Crosby one undivided third of the rancho which should be confirmed and patented, which agreement was evidenced by a deed executed by Olvera and a "defeasance" executed by Crosby. But no defeasance was, in fact, executed by Crosby, nor did Olvera agree to convey the undivided third of the land to Crosby—the recital being a misdescription of the deed and agreement between Olvera and Crosby, first above mentioned. It is alleged in the complaint, and found by the court, that Olvera, from November, 1859, to April 28, 1869, held the possession of the whole of the rancho, adversely to all the world, and that since that day Olvera and the plaintiff have held such adverse possession, and the evidence is sufficient to sustain that finding. The effect of such adverse possession was to extinguish the title which Olvera had conveyed to Crosby, in whosesoever hands it might be, at the time the Statute of Limitations had completely run. We are not to be understood, however, as holding that such adverse possession would have any effect as against a patent to the rancho subsequently issued, if Crosby and his grantees are entitled to the benefits of the patent. It did not retransfer the title of Crosby to Olvera, but, as we have often held, it extinguished it, and thus the entire title to the rancho was left in Olvera. That was the condition of the title, as shown by the finding, at the date of the deed of Olvera to the

plaintiff. That deed contains two descriptions. The first is, " the interest in said lands or rancho heretofore conveyed as aforesaid to said Elisha O. Crosby;" and the second is, "all the undivided third part of that tract of land and rancho, in the county of San Diego, called Cuyamaca." It was impossible for Olvera to convey the identical interest which he had theretofore conveyed to Crosby, for the title to that interest had been extinguished by the operation of Olvera's adverse possession, prior to the execution of the deed to the plaintiff. The first description cannot be construed as including any title acquired by adverse possession, for such title had not been conveyed to Crosby. It cannot with legal propriety be said that the interest conveyed to Crosby was any particular interest in the rancho; that is to say, there are no means by which one undivided third of the rancho can be distinguished from either of the other undivided thirds. The second description, therefore—the undivided third part of the rancho—is the only effective description of the interest conveyed to the plaintiff. The latter thereby became a tenant in common in the rancho with Olvera, holding an undivided third thereof, but not any particular one-third.

It is proper to add, that the first portion of the description of the interest conveyed by Olvera to the plaintiff is inoperative for another reason, which is, that the interest which was conveyed to Crosby having been conveyed absolutely, and without any condition or defeasance, was not in Olvera when he executed his deed to the plaintiff, and, therefore, he could not convey that interest. The finding, therefore, to the effect that Olvera conveyed to the plaintiff the identical third which he had theretofore conveyed to Crosby, cannot be sustained.

If the finding be construed as stating that Olvera, in accordance with our construction of the deed, conveyed to plaintiff one undivided third of the rancho generally, without limiting it to any particular third, the question arises whether the plaintiff can maintain the action. It is alleged in the complaint that the only claim which the defendants set up to the premises is derived under the deed of Olvera

to Crosby, and it is not alleged or found that they assert any other claim. That deed and the deeds derived therefrom constitute the only cloud upon the title, of which the plaintiff complains. In attacking the deed of Olvera to Crosby, it is of no importance to the plaintiff whether the sheriff's sale and deed were valid or invalid; nor are the other deeds under which the defendants claim title material to the inquiry here, for they are all derived from the deed of Olvera to Crosby. Can the plaintiff, being the owner of one undivided third of the rancho, and being in possession of the rancho jointly with Olvera, maintain an action to set aside, as a cloud upon his title, a deed of one undivided third of the rancho? It is not enough that the deed which is sought to be set aside may, *possibly*, be a cloud on the plaintiff's title, but it must clearly appear that the claim set up under such deed is, in fact, in hostility to the plaintiff's title. It cannot be said that the claim of title under that deed injuriously affects the plaintiff's title to an undivided third, rather than the title to either of the other undivided thirds, of the rancho. The case might be quite different if both parties claimed title under the deed to Crosby, but, as the case now stands, the plaintiff's title may be valid, and his deed have full effect, even if the defendant's title should be adjudged to be valid. The plaintiff, as the owner of an undivided interest in the rancho, does not make out a case by merely showing that the deed under which the defendants claim is invalid, but it must also appear that the assertion of title under it will impair or injuriously affect his title. The defendant's deed, if it were valid, might be fully satisfied without impairing, or in any manner affecting, the plaintiff's title.

Judgment and order reversed, and cause remanded for a new trial.

Remittitur forthwith.

CROCKETT, J., dissenting:

I am unable to agree with a majority of the Court in its interpretation of the deed from Olvera to Hartman. Though the phraseology employed in the description of the interest

conveyed is somewhat awkward, and not altogether free from obscurity, it becomes sufficiently free from ambiguity when considered in the light of the surrounding circumstances. It recites the previous conveyance to Crosby, the consideration for which it was made, and his failure to perform the contract, by reason of which the consideration failed. It then describes the interest intended to be conveyed to Hartman, as the same undivided one-third which had been "conveyed as aforesaid to said Elisha O. Crosby." The only purpose of this description was to repel the inference that the grantor intended to convey to Hartman any portion of the undivided two-thirds which he retained after the conveyance to Crosby. In other words, the manifest and only purpose of the grantor was to substitute Hartman to such rights in the land as Crosby would have had if he had performed the contract, and none other. If Hartman did not acquire that interest, he took nothing by the deed; and to hold that this limitation upon the interest conveyed, is nugatory, and that the deed was operative to convey to Hartman one of the two undivided thirds reserved by Olvera out of the conveyance to Crosby, is to frustrate the plain intention of the parties. Nor do I see any difficulty in giving to the deed the effect which the parties intended. If the interest conveyed to Crosby was extinguished or had become incapable of enforcement under the Statute of Limitations, it was competent for Olvera to convey to Hartman the particular interest which he had thus acquired by force of the statute, and to limit the conveyance to that purpose. The legal effect of the deed, therefore, was to transfer to Hartman such title to that particular third as Olvera could convey. It then became a question whether this particular third belonged to Hartman or to the defendant Reed, claiming under Crosby, and the purpose of this action was to determine that question. I perceive no reason why the action will not lie, and on the facts found I think the plaintiff is entitled to judgment.

Mr. Chief Justice WALLACE, being disqualified, took no part in the decision.