[L. A. No. 800. In Bank. — June 11, 1901.]

# E. DOWNING, Respondent, v. ALECK RADEMACHER and T. M. OSMONT, Appellants, and W. W. MIDDLE-COFF, Respondent.

DEED OF INTEREST IN MINE — CONSIDERATION — AGREEMENT TO WORK AND SHARE PROCEEDS — DEED SUBJECT TO CONDITIONS. — Where the owner of a mine deeded two thirds thereof, the sole consideration of which was a contemporaneous written agreement reciting its execution, and agreeing that the grantee should have the exclusive right to work the mine, and should mill and reduce all ores taken therefrom, and deliver one third of all minerals to the grantor, the deed and agreement constitute one instrument, as between the parties and grantees with notice, and must be read as though each referred to the other and incorporated its terms; and the deed is, in effect, subject to the conditions set forth in the 'agreement.

ID. — EQUITIES OF GRANTOR — CONDITIONAL ESTATE — IMPLIED OBLIGATION TO WORK MINE. — The conveyance being for a share of the proceeds of the mine, the equities of the grantor are the same as if a conditional leasehold estate had been granted. There is an implied obligation to work the mine, in order that the consideration agreed may be paid; and as the share of the grantor cannot be determined until the mine is worked out, the grant of the mine is conditional, for the protection of the grantor.

ID. — ACTION TO QUIET TITLE — FINDINGS — ERRONEOUS JUDGMENT — MODIFICATION UPON APPEAL. — The grantee of such deed, who has not performed his agreement, and his successor in part with notice, are not entitled to a decree quieting their title, as against the grantor, to the land conveyed thereby; and an erroneous judgment in their favor, in an action to quiet title, in which the findings show the deed and the contemporaneous agreement establishing the equitable rights of the grantor, will be reversed, and modified so as to decree that the deed is subject to the contract.

ID. — MORTGAGEE NOT MADE PARTY. — A mortgagee of the grantee by deed absolute, not made a party to the action to quiet title, cannot be concluded by the judgment therein.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

T. M. Osmont, for Appellants.

The agreement being the sole consideration for the deed, and part of the same transaction, the deed has no greater operation than if the agreement had been written in it. (Civ.

Code, sec. 1642; *Patterson* v. *Donner*, 48 Cal. 369; *Ingoldsby* v. *Juan*, 12 Cal. 564; *Uhlhorn* v. *Goodman*, 84 Cal. 189; *McCroskey* v. *Ladd*, 96 Cal. 455; *Glassell* v. *Coleman*, 94 Cal. 267; *Janes* v. *Throckmorton*, 57 Cal. 368, 380; *Leach* v. *Leach*, 4 Ind. 628;[1] *Norton* v. *Perkins*, 67 Vt. 203.) A condition subsequent may arise by implication (*Louisville etc. R. R. Co.* v. *Covington*, 2 Bush, 526); and where there is no other remedy under the contract, a condition subsequent does arise by implication. (*Richter* v. *Richter*, 111 Ind. 456; *Wilson* v. *Wilson*, 86 Ind. 472.) The grantee has an equitable lien or charge upon the land granted, to secure the performance of the contract. (Jones on Liens, sec. 27; *Manning* v. *Frazier*, 96 Ill. 279; *Pownal* v. *Taylor*, 10 Leigh, 172.) Downing cannot have the property without payment of the price agreed; cannot have his title quieted without doing equity himself. In suits to quiet title, as well as in other equitable actions, the court may always impose terms and adjust equities. Actions to quiet title are suits in equity, and governed by like rules. (*Brandt* v. *Wheaton*, 52 Cal. 430; *Benson* v. *Shotwell*, 87 Cal. 49; *Brandt* v. *Thompson*, 91 Cal. 458, 462; *Booth* v. *Hoskins*, 75 Cal. 271; *De Cazara* v. *Oreña*, 80 Cal. 132; *Hancock* v. *Plummer*, 66 Cal. 337; *Ballard* v. *Carr*, 48 Cal. 75.) A court of equity will mold its decree to meet the exigencies of the case. (1 Story's Equity Jurisprudence, sec. 28; 1 Pomeroy's Equity Jurisprudence, sec. 237.) It is not equity to quiet plaintiff's title unconditionally, without reference to the conditions of the contract.

J. W. Ahern, and Louttit & Middlecoff, for Respondents.

Conditions in grants are not favored in law, and, more than this, conditions involving forfeitures are abhorred by equity, and are never assisted or enforced by equity. Conditions involving forfeitures must be express, and they are strictly construed against the party in whose favor they are created. (Tiedeman on Real Property, sec. 863; Civ. Code, sec. 1442; *Craig* v. *Wells*, 11 N. Y. 320; *Sauer* v. *Meyer*, 87 Cal. 36; *Alexander* v. *Jackson*, 92 Cal. 522;[2] *Randol* v. *Scott*, 110 Cal. 595; *Lawrence* v. *Gayetty*, 78 Cal. 126;[3] *Hartman* v. *Reed*, 50 Cal. 485.) The plaintiff can never be disabled from mining upon the property. (*McCord* v. *Oakland etc. Min. Co.*, 64 Cal. 134.[4]) The court has no right to go beyond the contract of the parties.

[1] 58 Am. Dec. 642.
[2] 27 Am. St. Rep. 158.
[3] 12 Am. St. Rep. 29.
[4] 49 Am. Rep. 686.

TEMPLE, J. — This appeal is taken by defendants Rademacher and Osmont from a decree quieting the title of plaintiff to thirty-two sixtieths and of defendant Middlecoff to eight sixtieths of a certain mining claim.

Rademacher was, on the eleventh day of January, 1897, the owner of a certain mine in the Randsburg district, in this state. On that day he conveyed an undivided two-thirds interest in the mine to the plaintiff, and contemporaneously with the execution of the deed, and as the sole consideration for the conveyance, Downing delivered to Rademacher his agreement in writing. It was an agreement *inter partes*, Downing being party of the first part, and recited the contemporaneous execution of the deed, and also as follows: "Now, for the purpose of working said mine, said parties agree as follows: Said party of the first part shall have the exclusive right to work and mine upon said mining claim, and mine thereon in any way he shall see fit. He shall mill and reduce all the mineral ore taken out of the said mine by him, and deliver to said party of the second part one third of all of the gold or other minerals taken from said ore by said first party, free of cost and expense to the party of the second part." The contract proceeds to specify that Downing shall have certain rights as to water owned by Rademacher, and the privilege of selecting the mill at which ores are to be milled, and of erecting mills upon land claimed by Rademacher. It provides, also, that Downing shall secure Rademacher against the claims of certain named persons, and shall have control, for Rademacher, of a lawsuit then pending.

The suit is an action to quiet title, and a cross-complaint was filed by defendants Rademacher and Osmont, charging plaintiff and defendant Middlecoff with fraud. In the cross-complaint it was also charged that Downing never intended to mine said property, but procured the deed with intent to acquire two thirds of the mine without consideration. It is averred that he has failed efficiently to prosecute the work of developing and working the mine, and that work has ceased upon the same. The cross-complainants, apparently uncertain as to the remedy to which they may be found entitled, have made a very full statement of alleged facts, and have demanded relief in several forms.

The defendants in the cross-action have answered, fully denying the charges of fraud, and generally the alleged equities

of the cross-complainants. It may be considered that the con-. tract entered into when the deed was made was the sole consideration for the deed. It is also admitted that soon after Downing received his deed he conveyed eight sixtieths of the mine to Middlecoff, and subsequently conveyed the entire property to one Hyde, by a deed absolute on its face, but which deed was in fact simply a mortgage given to secure an indebtedness. The court so finds, but Hyde was not made a party to the suit, and the adjudication does not, therefore, conclude him.

The court found that the charges of fraud were not sustained, but the facts constituting the transaction are left substantially as stated. The court entered a decree quieting the title of Downing and Middlecoff, and adjudging them to own the interests respectively claimed by them, in fee, against Rademacher and Osmont, and all persons claiming or to claim under them. The decree deprives Rademacher of all equities in reference to the two-thirds interest conveyed by him to Downing, and determines that Rademacher conveyed away two thirds of his mine for the personal undertaking of Downing that if he should work the mine he would give Rademacher one third of all he should get, clear and free of expense to Rademacher; also, that Downing may sell his two thirds, and the grantees can work the mine, and, under the rule in *McCord* v. *Oakland etc. Min. Co.*, 64 Cal. 134,[1] not be chargeable with waste; and since Rademacher has by his contract given to Downing the exclusive right to work the mine, he could not offer to work the mine with the grantees of Downing, and therefore could not entitle himself, as against such grantees, to any portion of the proceeds of the mine. They would get the whole mine, instead of two thirds, although Rademacher might possibly have a personal demand for an amount equal to one third of the proceeds against Downing. But a result less favorable to Rademacher may be worked out. Middlecoff may commence a suit to have the mine partitioned, and would be entitled to his decree. The property, being incapable of division, may be sold, and Rademacher, at the best, would get one third of the proceeds. In other words, according to the decree, he did not sell, but he gave away, two thirds of his property.

He cannot compel Downing to specifically perform his con-

---

[1] 49 Am. Rep. 686.

tract, and if, as a matter of law, he could do so, that could, under the terms of the decree, be prevented by the possible action of Middlecoff. In an action for damages, nominal damages only could be recovered. No actual damage could be proven.

There is here no question of innocent purchasers without notice. The deed and the agreement constitute one instrument, and must be read as though each referred to the other and expressly incorporated its terms. And, in legal effect, what do they amount to? As between the parties, at all events, there is no such magic in a conveyance of a title in fee which can be used to do an owner out of his property. Under this contract and deed, all Downing acquired was the right to work the mine in his own way, on condition that he deliver to Rademacher one third of the valuable minerals obtained. The conveyance was, in effect, subject to this condition.

Respondent contends that the deed is not at all subject to the agreement, and that Rademacher had no equitable or other claim upon Downing's two-thirds interest, and to that effect is the judgment of the court. Upon this point counsel rely almost entirely upon the authority of *Hartman* v. *Reed*, 50 Cal. 485, and *Lawrence* v. *Gayetty*, 78 Cal. 126.[1] In *Hartman* v. *Reed*, 50 Cal. 485, the remarks quoted were not made with reference to anything there at issue. That the interest passed to Crosby was there admitted by all parties, but it was claimed that Crosby's title was barred by limitation, and Hartman had obtained a deed from Olvera which purported to convey to him the same interest Olvera had previously conveyed to Crosby. The effect of that deed was the only matter litigated in that case. But the remark has been quoted as authority in other cases, and it may be admitted that as a proposition of law it is sound. The analogy of that case to this is very slight. There, a deed was made in payment for legal services, which it was claimed had not been rendered. The grantor did not seek to avoid the deed for failure of consideration. It was simply said the contract of Crosby to render service was a sufficient consideration for the deed.

Here, the consideration of the deed is not simply the agreement to perform service. The purchaser was given exclusive possession of the mine, and, as payment for his interest, agreed that he would render to the vendor one third of the gross pro-

---

[1] 12 Am. St. Rep. 29.

ceeds obtained by working the mine. It is like a conveyance made of a farm for one third of the crops which thereafter should be produced. Suppose such a contract could be made, it would amount to a lease, and would imply that the grantee, or his assignees, should farm the land, and, no doubt, if they refused to perform, the land could be recovered. This conveyance was for a share in the proceeds of the mine, and is in every way analogous to the case supposed. The technical ideas in regard to leasehold estates do not attach to this, but the equities are the same, and so are the implied obligations to work the mine, that the consideration agreed upon may be paid. A similar comparison may be made with *Lawrence* v. *Gayetty*, 78 Cal. 126.[1] And in these cases, also, if an action for damages had been brought, something more than nominal damages could have been proven. Here the consideration for the deed was a proportionate share of the proceeds of the mine, which, of course, could not be determined until the mine had been worked out. This fact alone is sufficient to show that the grant of the mine was conditional. Rademacher had no possible remedy, except upon the theory that Downing's title was conditional. He did not intend to give his property to Downing without consideration, nor did Downing intend to get it for nothing. There is no other possible mode in which the agreed price can be paid. A sale of an interest in the mine, unless the purchaser takes subject to the equities of Rademacher, would be very likely to deprive Rademacher not only of all remedy, but of his property. Upon this ground Rademacher has a clear equity with reference to the portion of the mine conveyed to Downing. This equity binds Downing, and all who purchase from him with notice.

Upon this subject the case of *Richter* v. *Richter*, 111 Ind. 456, is directly in point. Richter executed to his son a warranty deed for a farm, for an expressed consideration of one thousand dollars. The real consideration was a contemporaneous agreement in writing, by the terms of which the son agreed to support his father so long as he should live. A few months afterwards the son refused to perform this contract. After a demand for reconveyance, the father brought suit to compel it. The defense there was the same as here, that the consideration for the deed was the agreement, and the only

[1] 12 Am. St. Rep. 29.
CXXXIII. Cal.—15

remedy the father had was to sue upon it. The contract purported to be a mortgage, though the court held it could not be enforced as such. It was said: "True, neither the deed nor the mortgage state in express terms that the estate is granted upon condition, but the word 'condition' is not necessary to the creation of an estate upon condition, if it plainly appears from the words used that the intent of the parties was to create an estate of that description. (*Stillwell* v. *Knapper*, 69 Ind. 558.[1]) In the construction of deeds, as in construing other writings, courts seek to ascertain and give effect to the real intention of the parties, as such intention may be gathered from the language of the whole instrument. The intent is what the law applies itself to in deeds. (*Watters* v. *Bredin*, 70 Pa. St. 235.) If from the nature of the acts to be performed by the grantee, and the time required for their performance, it is evidently the intention of the parties that the estate shall be held and enjoyed on condition that the grantee perform the acts specified, then the estate is upon condition. This is especially so when the grantor has reserved no other effectual remedy for the enforcement of performance on the part of the grantee."

The court cites the case of *Leach* v. *Leach*, 4 Ind. 628.[2] That was a similar case, except that the son agreed to deliver to his father a portion of the crops. It was held that a condition subsequent was created, although the writing did not expressly so provide. After citing *Leach* v. *Leach*, 4 Ind. 628,[2] the court proceeds to enlarge upon the proposition that there was no other remedy, and concludes that this fact is persuasive of the conclusion that it was intended as a condition attaching to the estate. To the like effect is *Wilson* v. *Wilson*, 86 Ind. 472.

A similar question was elaborately considered by the supreme court of Illinois in *Manning* v. *Frazier*, 96 Ill. 279. This controversy arose upon a conveyance of all the coal in a certain tract of land, with express license to the grantees to enter and mine for the same, paying a stipulated price per ton for the coal removed. The court held that here was a conveyance of land, and that the vendor had an equitable lien upon the entire interest conveyed for money due under the contract.

The principle involved is somewhat analogous to the familiar

---

[1] 35 Am. Rep. 240.        [2] 58 Am. Dec. 642.

case where one sells a part of his land and attempts to restrict the use of the part sold by his vendee for the benefit of the portion retained. This matter was elaborately considered by Judge Bigelow in *Whitney* v. *Union Ry. Co.*, 11 Gray, 359.[1] The question was, how far such restrictions are binding on grantees of the original grantee. It is held that the restriction is binding on those who take with notice. He says: "In like manner, by taking an estate from a grantor with notice of valid agreements made by him with the former owner of the property concerning the mode of occupation and use of the estate granted, the purchaser is bound in equity to fulfill such agreements with the original owner, because it would be unconscientious and inequitable for him to set aside and disregard the legal and valid acts and agreements of his vendor in regard to the estate of which he had notice when he became its purchaser." He further states that the form of the agreement is immaterial. It need not be a covenant running with the land. It is an equity which attaches itself to the land sold for the benefit of the land retained. The matter was considered in fixing the price. It was a part of the contract of sale. The vendee gets the land at a lower price because of the burden, and so do his grantees. They are continually paying for the land.

The matter is elaborately discussed in a note to *Ladd* v. *Boston*, 21 Am. St. Rep. 481, where very numerous authorities are cited and considered.

The respondents are not entitled, under the findings, to have their titles quieted as against Rademacher and his grantee, appellants here, but said appellants are entitled on said findings to a decree declaring that Downing took, and he and his grantee now hold their interests in said mining claim, subject to the contract entered into by Downing and Rademacher, and it is ordered that the decree be modified accordingly.

McFarland, J., Henshaw, J., Garoutte, J., Van Dyke, J., and Beatty, C. J., concurred.

[1] 71 Am. Dec. 715.