[Civ. No. 807. Third Appellate District.—April 3, 1911.]

## HERBERT SHAW, Respondent, v. E. F. CALDWELL and MARTHA CALDWELL, Appellants.

MINE—DEED OF ONE-HALF INTEREST—OPTION TO GRANTEES TO DEVELOP AND DIVIDE PROCEEDS — CONSTRUCTION—REVOCABLE LICENSE.—An agreement in a grant, bargain and sale deed of one-half interest in the grantor's mine, that the two grantees "may work and develop said mine at their own cost and expense, and all gold and proceeds taken therefrom for a period of twenty years from date hereof shall be divided equally between the parties hereto," each party to "have one-third of said proceeds," is to be construed in accord with the natural and ordinary signification of the terms employed, as constituting a mere permission or license to the grantees to work the mine at their own expense, at their option, and which might be revoked by the grantor.

ID.—ABSENCE OF IMPERATIVE WORDS OR AGREEMENT TO WORK MINE.—The grantees were merely empowered in apt words to exercise their choice in the matter of working the whole mine. There are no imperative words nor any agreement on their part to work the grantor's interest in the mine at their expense.

ID.—CONDITIONAL OBLIGATION TO DIVIDE PROCEEDS.—The only obligation imposed upon the grantees is that concerning the division of the proceeds as agreed in case they should exercise their option to work and develop the whole mine.

ID.—PERMISSIVE NATURE OF PROVISION CONFIRMED BY CONDUCT OF PAR-TIES—JOINT WORKING OF MINE.—The permissive nature of the provision for the working of the whole mine by the grantees is confirmed by the conduct of the parties, who by their joint working of the mine gave no effect to that provision for the period of two years.

Id.—Consideration of Deed—Permission to Work Grantor's Interest not Part Consideration—Compensation.—It is held that there is nothing in the deed of the one-half interest to show that the permission to work the grantor's remaining half interest in the mine was any part of the consideration of such deed. The only consideration expressed in the deed is one dollar, and the agreement to do all the assessment work, which is sufficient to support the deed. Under proper rules of construction, such permission would be no part of such consideration, but the additional one-sixth interest for working the grantor's interest is to be deemed just compensation for working the same at the expense of the grantees, who have an absolute right to work their one-half interest.

Id.—Agreement not a Condition upon Estate Conveyed in Fee.—The estate conveyed by the owner of the mine to his grantees was an estate in fee in an undivided half thereof; and the fee thereby conveyed could only be reduced or qualified by language equally plain which does not appear. Even if the agreement to work the mine were part of the consideration, it cannot be deemed as creating a condition subsequent, or modifying in any degree the estate conveyed.

Id.—Creation of Conditions Subsequent—Strict Construction against Forfeiture.—Conditions subsequent relied upon to create a forfeiture can only be created by express terms or clear implication, and are to be construed strictly against a forfeiture, which is not favored in law.

Id.—Nature and Test of License—Distinction from Lease—Question of Law.—A license as to real estate is an authority to do a particular thing upon the land of another without possessing an estate therein. The test to determine whether an agreement for the use of real estate is a license or a lease is whether the contract gives exclusive possession as against all the world, including the owner, in which case it is a lease, or whether it merely confers a privilege to occupy under the owner, in which case it is a license. This is a question of law arising out of the construction of the instrument under which a lease or a license may be created.

Id.—License Limited to Owner's Remaining Half Interest.—The license to work the mine at the expense of the grantees of a half-interest therein was, by the nature of the case, limited to the one-half interest left remaining in the grantor, which was the only interest subject to a license, the fee of the other half interest being vested in the grantees, which necessarily carried with it the right of possession and development thereof.

Id.—License a Mere Personal Privilege—Revocation by Conveyance of Owner's Interest.—A license is a mere personal privilege resting upon personal confidence. A mere license is not assignable, nor can it be a covenant running with the land, or work a breach of the warranty of title. It is subject to revocation by the licensor,

and is revoked in fact by conveyance of the owner's remaining one-half interest.

ID.—COVENANTS TO GRANTEE—ESTOPPEL OF GRANTOR TO CLAIM FURTHER INTEREST.—The grantor of such interest being charged with covenants that he had conveyed no right or interest therein to any other person, and that it is free from any encumbrance made or suffered by the grantor, is estopped to claim that he has a remaining interest as owner, under a previous grant of possession thereof for twenty years, with a right to profits arising therefrom to himself.

ID.—RIGHTS OF GRANTEE.—The grantee of the owner's half interest is not bound by the terms of any license conferred by the former owner upon his former grantees of another half interest, but is entitled to claim a full half interest in the mine; and such right must be conceded by such former grantees, whose rights under license from the former owner were fully terminated.

APPEAL from a judgment of the Superior Court of Tuolumne County.   G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

J. C. Webster, for Appellants.

J. B. Curtin, for Respondent.

BURNETT, J.—On February 5, 1904, plaintiff was the owner of the Hunter creek mine.  On said date, by a grant, bargain and sale deed, he conveyed to E. Caldwell and E. F. Caldwell "an undivided one-half interest in and to" said mine.  It is recited in said deed that it was "for and in consideration of one dollar to him in hand paid by the parties of the second part," and also "it being one of the considerations of this conveyance, that said parties of the second part will, during the period in which the party of the first part shall be the owner of the remaining one-half of said mine, do and perform at their own cost and expense all work required to be done upon said mine in order to comply with the provisions of section 2324 of the Revised Statutes of the United States, and should they fail at any time so to do, then the party of the first part shall be entitled to have said one-half interest in said mine as hereby conveyed, reconveyed to him, and the parties of the second part shall thereafter have no interest in said mine."  The deed likewise contained this clause: "It is furthermore agreed, that the parties of the

second part may work and develop said mine at their own cost and expense, and all gold or proceeds taken therefrom for a period of twenty years from date hereof shall be divided equally among the parties hereto, that is to say, each party hereto shall have one-third of said proceeds." On the twenty-fourth day of January, 1906, for a consideration of $100, plaintiff sold and conveyed to one Thomas Armstrong "all of his right, title and interest, same being a one-half undivided interest, of, in and to" said mine, and, prior to the beginning of this action defendant, D. J. Sutton, by mesne conveyances, had succeeded to this interest. On the twenty-eighth day of July, 1906, the said E. Caldwell conveyed all of his interest in said property to defendant, Martha Caldwell. No gold was taken out of the mine until after the conveyance by plaintiff to Armstrong, as aforesaid, and the action was brought to recover one-third of the proceeds of the development of the mine from and subsequent to July 30, 1906. The court found that the said agreement as to the division of the proceeds of the mine is still in full force and effect, and that "plaintiff is entitled to have paid over to him by defendants E. F. Caldwell and Martha Caldwell, one-third of all gold and proceeds derived from operating and working the mine for a period of twenty years from and after the fifth day of February, 1904," and, upon an account taken, it was determined that at the time of the trial there was due, under this agreement, the sum of $72.30, for which amount judgment was entered for plaintiff. From this judgment the appeal is taken by defendants, E. F. Caldwell and Martha Caldwell.

The decisive factor in the case is the construction of said agreement as to the development of the mine and the division of the proceeds. By appellants it is contended that this constitutes a mere permission or license to work the property at their own expense, which might be exercised or not by the Caldwells, and which was in fact never exercised until it was revoked by the plaintiff when he executed the said conveyance to Armstrong. This seems to be in entire accord with the natural and ordinary signification of the terms employed. It is to be observed that the agreement is "that the parties of the second part *may* work and develop said mine at their own cost and expense." More apt words could hardly have been selected to empower the parties of the second part to

exercise a choice in the matter. It is not made imperative, and there is no agreement on their part that they will work the mine at their own expense. The only obligation imposed upon them is that concerning the division of the proceeds as aforesaid in case they exercise their discretion to so develop the mine. It is true that *may* is sometimes construed as *must,* but this is only for the purpose of effectuating the intention of the parties. There does not appear to be any reason why we should depart here from the ordinary meaning of the terms employed. On the other hand, several circumstances seem to concur in support of the natural interpretation of the language found in said agreement. One of these circumstances is the conduct of the parties themselves. Admittedly, for two years no effect was given to this provision. Plaintiff worked the mine, in connection with the other parties to the agreement, and there seems to have been no contention that the latter were required to operate it at their own expense. In other words, the parties, by their actions, interpreted the contract as permissive merely. Again, the only other possible view of the provision is that it was intended as a part of the consideration for the conveyance of one-half of the mine to said parties, or that it constitutes a limitation upon the estate conveyed to the latter. As to the former contention it may be said that there is nothing in the deed itself to show that it was a part of the consideration, and it seems unreasonable to conclude that it should be so held. Indeed, the consideration is mentioned expressly as one dollar and the assessment work to be done by the grantees. Thereby, in accordance with a familiar rule of construction, must the provision before us be deemed no part of the consideration for said conveyance. Furthermore, it may be urged that the performance of the assessment work seems to have been sufficient compensation for one-half of the mine, and it may be added that, since the grantees were entitled to one-half of the proceeds by virtue of the said conveyance, the additional award of one-sixth could hardly have been considered more than sufficient to reimburse them for the labor and expense of the development of plaintiff's portion of the mine.

Likewise, we fail to see anything in the language used or the surrounding circumstances to indicate any purpose to impose any condition upon the estate conveyed to the gran-

tees. By the formal terms employed in the granting clause, plaintiff did "grant, bargain and sell" to said grantees an undivided one-half interest in said premises, "together with all and singular the tenements and appurtenances thereto belonging or otherwise appertaining." The fee thereby conveyed could only be reduced or qualified by language equally plain. Nothing of the kind is found. Indeed, if the agreement in controversy be regarded as a part of the consideration, it cannot be deemed as creating a condition subsequent or modifying in any degree the estate conveyed. In *Hartman* v. *Reed*, 50 Cal. 485, it is held that "if one conveys to another a tract of land, part of a Mexican grant, in consideration of an agreement by the other to prosecute the claim before the courts for final confirmation, and the grantee fails to fulfill his agreement, the title vests absolutely and the remedy of the grantor for the breach of the agreement is an action for damages."

In *Lawrence* v. *Gayetty*, 78 Cal. 126, [12 Am. St. Rep. 29, 20 Pac. 382], the consideration was the promise to make valuable improvements, and the court said: "It must be borne in mind that the plaintiff did not contract to convey upon the performance of the contract on the part of the defendants; therefore, his promise was not dependent upon theirs; nor was there anything appearing in the deed, or in the contract under which it was made, showing or tending to show that a compliance with their promise was regarded as a condition subsequent, or that a failure to perform on their part should in any way affect the title conveyed to them. The case is precisely in principle the same as if the plaintiff had conveyed and taken a note for the purchase money and the defendants had failed to pay the same."

In *Cullen* v. *Sprigg*, 83 Cal. 56, [23 Pac. 222], it is held that "the recital in a deed that it is in consideration of a certain sum and that the grantee is to do certain things is not an estate upon condition, not being in terms upon condition, nor containing a clause of re-entry or forfeiture."

To the same effect is *Behlow* v. *Southern Pac. R. R. Co.*, 130 Cal. 16, [62 Pac. 295], wherein the familiar doctrine is asserted that "Conditions subsequent, especially when relied on to work a forfeiture, must be created by express terms or clear implication and are to be construed strictly against a for-

feiture, which is not favored in law.'' It is held, further, that ''a provision in the deed by which the railway company agrees, as a further consideration of the grant, to place two stations at a location to be selected by the grantor, at which all trains must stop, is not a condition upon which the estate is granted, and is not available to defeat the estate created by the grant, but is merely a personal covenant on the part of the grantee.''

The situation is clearly brought within the definition of a license in respect to real estate, which is an authority to do a particular act or series of acts upon the land of another without possessing an estate therein. (25 Cyc. 640.) The test to determine whether an agreement for the use of real estate is a license or a lease is whether the contract gives exclusive possession of the premises against all the world, including the owner, in which case it is a lease, or whether it merely confers a privilege to occupy under the owner, in which case it is a license, and this is a question of law arising out of the construction of the instrument. (Id.)

It is said in *Wheeler* v. *West,* 71 Cal. 126, [11 Pac. 871]: ''There is a broad distinction between a lease of a mine, under which the lessee enters into possession and takes an estate in the property, and a license to work the same mine. In the latter case the licensee has no permanent interest in the property, or estate in the land itself, but only in the proceeds, and in such proceeds, not as realty but as personal property; and his possession, like that of an individual under a contract with the owner of land to cut timber or harvest a crop of potatoes thereon for a share of the proceeds, is the possession of the owner.'' This license granted to the said parties affected, of course, only the one-half interest belonging to plaintiff, as their ownership of the other half carried with it, necessarily, the right of possession and development.

As to the plaintiff, his right under the provision in question was to insist upon one-third of the proceeds of the mine in case the licensees exercised their option, and it was his privilege to revoke the license at his pleasure. The license was in fact revoked by his said conveyance to Armstrong. This necessarily follows from the nature of a license. It being a mere personal privilege, it is not, of course, a covenant running with the land; it does not bind, therefore, the successors in interest of the parties, and it would be manifestly inequitable

to allow the plaintiff to enjoy the benefits of the agreement
when he had deprived the other parties of the reciprocal privi-
lege conferred by said provision.

"A license is founded upon personal confidences, a mere
personal privilege extending to the person to whom it is given,
and is therefore not assignable and an attempt to assign termi-
nates the privilege." "A mere license, which is nothing more
than a personal privilege, is revocable at the pleasure of the
licensor, and the fact that the license was created by a written
instrument, or even conferred by deed, does not affect the rule
of revocability at the option of the licensor." (25 Cyc. 644.)
"A license may be revoked by a sale and conveyance of the
land without reserving the privilege to the licensee or by a
lease or mortgage of the same, for a mere license cannot work
a breach of the warranty of title." (25 Cyc. 650.)

The foregoing is undoubtedly the view of the situation taken
by plaintiff when he executed said deed to Armstrong. The
following covenants were therein implied: "1. That previous
to the time of the execution of such conveyance, the grantor
has not conveyed the same estate, or any right, title or interest
therein, to any person other than the grantee; 2. That such
estate is at the time of the execution of such conveyance free
from encumbrance done, made or suffered by the grantor, or
any person claiming under him." (Civ. Code, sec. 1113.)
According to respondent's theory of the case, he had previ-
ously conferred upon said grantees the right to the exclusive
possession of the whole of said land for the term of twenty
years, and he comes into court insisting that they now have
such right. He cannot do this in the face of his warranty
that he had not conveyed any interest in his part of the prop-
erty to anyone and had not suffered any encumbrance to at-
tach to it. But it is insisted that Armstrong had notice of
the previous conveyance, and therefore he took the estate sub-
ject to the previously imposed burden. Manifestly, this
would be of material significance if the former grantees were
asserting some interest in the estate apparently conveyed by
plaintiff to Armstrong, but it would require a long search to
find an authority holding that the *grantor* of such a convey-
ance would be heard to assert that he was still the owner of
an interest by virtue of a reservation in a former deed. By
the said conveyance the plaintiff does not only "grant, bar-

gain, sell, remise, release, and forever quitclaim unto the said party of the second part, and to his heirs and assigns, all of his right, title and interest, same being a one-half undivided interest in and to'' said property, but he specifies "together with all the dips, spurs and angles and also all the metals, ores, gold and silver bearing rock, quartz, rock and earth therein; and all the rights, privileges and franchises thereto incident, appendant and appurtenant or therewith usually had and enjoyed, and also all and singular the tenements, hereditaments and appurtenances thereto belonging or in any wise appertaining, and the rents, issues and profits thereof.'' It is needless to add that, in view of the foregoing recitals, it is a conclusive presumption against the plaintiff that he was at the time the absolute owner of an undivided one-half interest in said mine.    (Code Civ. Proc., sec. 1962, subd. 2.)

Nor can it be claimed that this is a circumstance of no concern to appellants.    They have recognized the said provision as conferring simply a personal privilege and, therefore, considering it revoked by the said deed from plaintiff to Armstrong, they cannot consistently dispute the right of Armstrong's grantee to one-half of the proceeds of the mine. Under respondent's contention they must unquestionably yield to him two-thirds of the balance and be content with one-sixth of what the mine yields.

The case upon which respondent principally relies is *Downing* v. *Rademacher*, 133 Cal. 220, [85 Am. St. Rep. 160, 65 Pac. 385].    Therein it is held, as stated in the syllabus, that ''where the owner of a mine deeded two-thirds thereof, the sole consideration of which was a contemporaneous written agreement reciting its execution and agreeing that the grantee should have the exclusive right to work the mine, and should mill and reduce all ores taken therefrom, and deliver one-third of all minerals to the grantor, the deed and agreement constitute one instrument as between the parties and grantees with notice, and must be read as though each referred to the other and incorporated its terms; and the deed is in effect subject to the conditions set forth in the agreement.''    It is to be observed as to that case that the contract entered into was the sole consideration for the deed, there was an entire failure of such consideration, and the court held that the circumstances showed that the grant of the mine was conditional.

From another standpoint the conclusion of the court is shown to be just and equitable. Downing brought suit to quiet his title. This, as well settled, is an equitable action. The circumstances of the case made peculiarly applicable the maxim that "he who seeks equity must do equity." It is indeed strange that it should be contended that a plaintiff declining to pay any part of the consideration or to meet his obligation imposed thereby could obtain from a court of equity a decree establishing his title without being required, as a condition precedent, to perform his promise, by virtue of which the conveyance to him had been made. As stated in the Downing case by the late Mr. Justice Temple: "As between the parties, at least, there is no such magic in a conveyance of a title in fee which can be used to do an owner out of his property."

The cases from other jurisdictions cited by the court in the Downing case also exhibit a situation totally different from what we have here. For instance, in *Richter* v. *Richter*, 111 Ind. 456, [12 N. E. 698], the real consideration was a contemporaneous agreement in writing by the terms of which the son agreed to support his father so long as he should live. A few months afterward the son refused to perform this contract. The father brought suit for a reconveyance. The defense was that the consideration for the deed was the agreement and the only remedy the father had was to sue upon it. But the court, applying the familiar doctrine that, "in the construction of deeds as in construing other writings, courts seek to ascertain and give effect to the real intention of the parties as such intention may be gathered from the language of the whole instrument," reached the just conclusion that the parties intended that the estate should be held and enjoyed on condition that the grantee perform the acts specified and therefore that it was a conditional estate. So in *Manning* v. *Frazier*, 96 Ill. 279, the defendant entered into a written contract with John R. Squire and O. D. Payne, by which he, in consideration of one dollar and the agreements contained in the contract, bargained, sold and conveyed to them, their heirs and assigns, all of the coal, limestone, iron ore, rock, oil and other minerals in, upon or under a certain farm or tract of land which was particularly described, and contains seven hundred acres. The deed granted to them the right to enter upon and search for such minerals and to dig, mine, explore

and occupy with necessary structures and buildings, and to mine and remove the coal, limestone, etc. And the parties of the second part *were bound* to enter upon and make search for coal, etc., within two years from that date. They were also bound to have preparations made for taking out coal for market within two years, and they were to pay to the party of the first part twelve cents for each ton of coal and lime-stone mined and removed from the land, and for ore ten cents per ton, payments to be made quarterly. The only questions decided were that the transaction amounted to a sale of real estate and that the grantor had a vendor's lien on the coal, etc., in the entire mine for the whole of the purchase price, the court saying: "The minerals were sold, the purchase money was not paid, and, as complainant did nothing mani-festing an intention to waive his vendor's lien, equity will hold that it attached and must be enforced for the amount of purchase money due and unpaid."

It must be apparent that none of the foregoing cases in-volved the question of license, and each of them possessed features appealing irresistibly to the conscience and compel-ling the decision that was rendered.

To summarize: It appears reasonably certain—1. That a mere license was created by the agreement in controversy and not a condition subsequent; 2. That it operated neither to convey nor to reserve any estate in any part of the mine to which it related. Indeed, this is implied in the finding of the court "That on the fifth day of February, 1904, the plaintiff executed to one E. Caldwell and defendant, E. F. Caldwell, an instrument in writing wherein and whereby the said plain-tiff did sell and convey unto said E. Caldwell and defendant E. F. Caldwell the individual one-half of the Hunter creek mine," and "That on the twenty-fourth day of January, 1904, the plaintiff sold and conveyed the remaining one-half of said Hunter creek mine to one Thomas Armstrong by deed and conveyance in the words and figures following"; 3. That the payment by said licensees to plaintiff of one-third of the pro-ceeds in case the mine was operated by the former at their expense implied the reciprocal duty on the part of plaintiff not to interfere with their possession of the whole of said mine; 4. That said license was revocable at the pleasure of

the licensor, and it was actually revoked by said conveyance to Armstrong.

These views necessarily lead to a decision different from that reached by the learned trial judge, and the judgment and order are, therefore, reversed.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 1, 1911.