### SMITH v. ROYAL INS. CO., Limited.
### No. 9202.

Circuit Court of Appeals, Ninth Circuit.

May 6, 1940.

As Amended May 22, 1940.

Rehearing Denied June 7, 1940.

668

A. B. Bianchi and James M. Hanley, both of San Francisco, Cal., for appellant.

Long & Levit, Percy V. Long, Bert W. Levit, and William H. Levit, all of San Francisco, Cal., for .appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The suit is on a valued policy of fire insurance upon a leasehold interest of appellant in property located in Belvedere, California. The case was here on two prior occasions. 77 F.2d 157; 93 F.2d 143. On the first appeal a judgment in favor of appellant was reversed on the ground that a stipulation contained in a deed from the Belvedere Land Company to the Town of Belvedere, solely relied on in the complaint, did not of itself dis-

close an insurable interest in appellant. On the second appeal a judgment in favor of the insurance company, entered on demurrer to appellant's amended complaint, was reversed on the ground that the amended pleading stated a cause of action.

The present appeal is from a judgment in favor of the company entered after a trial to the court. The question presented is whether the proof established a right of recovery on the policy, more particularly whether an insurable interest in the nature of a leasehold in appellant was shown.

The contract of insurance reads as follows:

"$15,000.00—On assured's Leasehold Interest in property located on the Beach Road on the westerly shore of Belvedere Cove, as per Belvedere Land Company's map of Belvedere, Marin County, California, being a two-story, frame-stucco, hard roofed dwelling house.

"This insurance is predicated upon lease to land above described held by the assured from the Trustees of the City of Belvedere, California, to which there is paid a monthly rental of three dollars ($3.00).

"If, by fire occurring during the term of this policy, the dwelling house owned and occupied by the assured situate on above described land is destroyed and thus cause the cancellation of lease in accordance with the terms and conditions, the measure of loss payable under this policy shall be not exceeding this Company's pro rata share of the sum which the assured would be required to pay to secure a new lease from the City Trustees of the town of Belvedere, and in no event to exceed the amount of this policy. In event the property cannot be re-leased, then the whole sum of this insurance shall be payable to the insured hereunder.

"It is understood and agreed that there shall be no loss payable under this policy except as a result of fire of sufficient extent to cause the cancellation of the lease.

"It is understood and agreed that the building stands on ground not owned by the insured."

The property involved is a strip of land on the westerly shore of Belvedere Cove on which was a residence structure, known as the Anchorage, erected by one Hugo D. Keil in 1884. It was proved without contradiction that Keil and his successors in interest, including appellant, had occupied these premises as a residence for a period of more than forty years, ending with the destruction of the dwelling by fire in 1932. Keil was the original occupant. The land, with other neighboring parcels, belonged to the Belvedere Land Company which, in 1897, conveyed it to the Town of Belvedere. The deed reserved to the grantor "all rents collected by the said Town for the use of any portion of said strip of land and particularly the land rents paid by the owners of the Keil, Crocker and Magill cottages, and the owners of the Red and White Cottages." A condition of the grant was that "neither of the five private residences or cottages now standing upon said beach shall be renewed in case of destruction by fire or otherwise and that said cottages shall remain thereon as long as and subject to such conditions as shall be determined by said Town." The deed provided for a reversion of title to the grantor in the event of a violation of its conditions.

From 1890 until the execution of this deed, and thereafter so long as he continued to occupy the premises, Keil regularly paid rent to the Belvedere Land Company at the rate of $3 per month. In 1910 he conveyed the residence and appurtenances, together with his interest in the premises, to a Mrs. Bland, his sister-in-law. Mrs. Bland and her daughter, after the former's death in 1926, lived there until the place was purchased by appellant in 1928. They made many improvements and continued to pay rent to the Land Company.

In 1928 appellant acquired the property and tenements by deed from the testamentary trustee of Mrs. Bland. Thereafter on permit from the authorities of the Town of Belvedere appellant made extensive alterations and improvements on the structures and grounds, involving an expenditure of approximately $25,000. The Town, however, refused him a permit to build a garage, on the expressed ground that the condition in its deed prohibited the erection of additional structures. He paid monthly rent to the Land Company and at the time of the fire his rent had been paid about four months in advance. In July, 1929 appellant procured the insurance in question. In 1932, during the life of the policy, the structures were totally destroyed by fire and the Town refused permission to rebuild.

During the whole period of nearly half a century appellant and his predecessors in interest had exclusive possession of the tract against all the world, including the owner. Their possession was lawful and their exclusive occupancy was accompanied by the regular payment of rent. The question here concerns the nature of their tenure—whether it was a leasehold interest or a mere license.

As bearing on the question whether these people were tenants or licensees of the owner the deed of 1897 proves nothing, either one way or the other. Despite expressions to the contrary in our first opinion, the quoted language of the deed is entirely consistent with the existence of a tenancy. And we are constrained to disapprove, also, as not accurately reflecting the applicable law, the court's intimation there concerning the necessity of appellant's proving an express lease.

A license has been defined by the California courts as "an authority to do a particular act, or series of acts, on another's land, without possessing any estate therein." Emerson v. Bergin, 76 Cal. 197, 18 P. 264, 266; Potter v. Mercer, 53 Cal. 667; Shaw v. Caldwell, 16 Cal.App 1, 115 P. 941; 16 Cal.Jur. 277. It has also been defined as "a personal, revocable, and unassignable privilege conferred either by writing or parol to do one or more acts on land without possessing any interest therein." Gravelly Ford Canal Co. v. Pope & Talbot Land Co., 36 Cal. App. 717, 178 P. 155, 163; Eastman v. Piper, 68 Cal.App. 554, 229 P. 1002; 16 Cal. Jur. 277. In Shaw v. Caldwell, supra, the court said [16 Cal.App. 1, 115 P. 943]: "The test to determine whether an agreement for the use of real estate is a license or a lease is whether the contract gives exclusive possession of the premises against all the world, including the owner, in which case it is a lease, or whether it merely confers a privilege to occupy under the owner, in which case it is a license * * *." On the basis of the test of the exclusiveness of their possession, appellant and his predecessors in interest were not licensees, but lessees. They did not occupy under the owner, but to the exclusion of the owner.

Like other contracts, a lease may be implied from the circumstances and the conduct of the parties. In California it has been held that payment of rent by one in possession to another claiming as owner creates a presumption that the relation of landlord and tenant exists. Lummer v. Unruh, 25 Cal.App. 97, 142 P. 914. See, also, Cook v. Klenk, 142 Cal. 416, 76 P. 57; Herman v. Rohan, 37 Cal.App. 678, 174 P. 349; Williamson v. Hallett, 108 Wash. 176, 182 P. 940; Doe ex dem. Barrett v. Jefferson, 5 Houst., Del., 477; Cressler v. Williams, 80 Ind. 366, 367; Morrill v. Mackman, 24 Mich. 279, 9 Am. Rep. 124; Tiffany, Real Property, 2d Ed., Vol. 1, pp. 215, 216.

A tenancy at will may arise as a result of the taking of possession of land by permission, "permissive possession" as it is called, without any understanding as to the duration of the possession; and this tenancy may, by reason of the reservation or payment of rent, be changed into a periodic tenancy. Tiffany, Real Property, 2d Ed., Vol. 1, pp. 215, 216; Calif. Civil Code § 1944. Here, through the monthly payment and acceptance of rent, a month-to-month tenancy existed. While, because of the arrangement between the Town and its grantor, the latter was entitled to the rents, the relationship between the Town and the occupant was essentially that of landlord and tenant. Such tenancy constitutes an estate in real property. Calif. Civil Code § 761.

An estate of that nature is an insurable interest. § 281 Calif. Insurance Code, St.Cal.1935, p. 503, provides that "every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured, is an insurable interest." By force of the deed under which the Town held, appellant's estate in the land he occupied was terminable by destruction of the buildings by fire or otherwise. The contemplated peril of fire would directly damnify the insured since it would necessarily result in the termination of his tenancy. For further authorities in support of the insurable nature of such a tenancy, see Commercial Union Assur. Co. v. Jass, 5 Cir., 36 F.2d 9; Buffalo Ins. Co. v. Bommarito, 8 Cir., 42 F.2d 53, 70 A.L.R. 1211; Schaeffer v. Anchor Mutual Fire Ins. Co., 133 Iowa 205, 100 N.W. 857, 110 N.W. 470; Id., 113 Iowa 652, 85 N.W. 985; Berry v. American Cent. Ins. Co., 132 N.Y. 49, 30 N.E. 254, 28 Am.St.Rep. 548; 1 Couch, Enc. Ins., §§ 292, 293.

Notwithstanding lack of proof of a formal lease, we think it must be

held that the policy properly described appellant's estate as a lease or a leasehold interest. The definition of these terms appears to embrace, in effect, any agreement, whether express or implied, which gives rise to the relationship of landlord and tenant.

 " 'A lease,' as defined by Bouvier, 'is a contract for the possession and profits of land on one side, and a recompense of rent, or other income, on the other;' or 'it is a conveyance of lands and tenements to a person for life, *for years, or at will,* in consideration of a return of rent or other recompense.' " (Emphasis supplied). Walls v. Preston, 25 Cal. 59.

" 'The relation of landlord and tenant is created by contract, either express or implied, by the terms of. which one person designated "tenant" enters into possession of the land under another person known as "landlord." And a lease has been defined as a contract for the possession and profits of lands and tenements on the one side, and a recompense of rent or other income on the other; or it is a conveyance to a person for life, *or years, or at will,* in consideration of a return of rent or other recompense. * * *' 16 R.C.L. 530." (Emphasis supplied). Stone v. City of Los Angeles, 114 Cal. App. 192, 299 P. 838, 841.

See also 15 Cal.Jur. 599; Femmer v. City of Juneau, 9 Cir., 97 F.2d 649, 657; In re Barnett, 2 Cir., 12 F.2d 73, 76; Asher v. Johnson, 118 Ky. 702, 82 S.W. 300; Harvey Coal & Coke Co. v. Dillon, 59 W.Va. 605, 53 S.E. 928, 6 L.R.A.,N.S., 628; 2 Bl.Com. 317; 18 Am. & Eng.Enc. of Law, 2d Ed., 597.

Appellant's tenure was terminable on the happening of the contingency insured against, and the contingency occurred. Understandably enough, the case was decided below on the theory that to entitle appellant to recover. he must prove an express lease for a term commensurate with the life of his structures. The insurance contract does not so provide; and such is not the law of the case.

Significantly the policy fails to describe the leasehold as one for a fixed term such as would normally have appeared had the interest insured been evidenced by an express contract. Hence, to bring himself within the provisions of the policy, appellant need establish no more than an insurable interest in the nature of a lease-hold. This he did. It was not essential that he go further and prove the existence of a tenancy for a term running at all events until the destruction of his buildings.

Appellant may amend his complaint in conformity with his proof, and appellee may amend its answer if it so desires. On another trial appellee will have the opportunity of proving such affirmative defenses as may be available to it.

Reversed.