[No. 19503.    Department Two.—March 14, 1895.]

## SHENANDOAH MINING AND MILLING COMPANY, Respondent, v. A. C. MORGAN et al., Appellants.

Water Rights—Appropriation of Springs—Pleading—General Demurrer.—In an action to enjoin an interference with an alleged right of plaintiff to take water from certain springs for the use of its mine and mill, a complaint alleging that for the purpose of securing a water supply for its mill plaintiff took possession of certain springs by entering upon the land and constructing the necessary ditches, reservoirs, and pipe lines, and thereby conducted the water to the mill, and had adverse possession of the water and springs for a period of more than five years, although not containing the word "appropriated" or "appropriation," sufficiently alleges an appropriation of the water as against a general demurrer.

Id.—Springs on Lieu Land of State—Certificate of Purchase—Right of Appropriation—Act of Congress of 1866.—Where the springs claimed by the plaintiff were situated upon land selected by the state in lieu of a school section, and a certificate of purchase had been issued to one of the defendants prior to the appropriation made by the plaintiff, the springs were not upon government land belonging to the United States, and were not the subject of appropriation by the plaintiff, and the act of Congress of 1866, protecting accrued water rights, has no application.

Id.—Title of State to Lands—Relation.—Where, by reason of the loss of school sections, selections are made by the state of other lands in lieu thereof, the listing of such lands to the state conveys the legal title as effectually as a patent, and the title so transferred relates back to the date of the selection made and reported to the local land-office, and cuts off all subsequent claimants under the government of the United States.

ID.—USE BY PERMISSION NOT ADVERSE—INJUNCTION.—Where the evidence shows that the use of the water of a spring was by permission of the owner, without proof of a grant from the owner, the plaintiff has no title which would support an injunction against the use of the spring by the owner or his associates.

ID.—TITLE BY GRANT NOT PLEADED—VARIANCE—EVIDENCE.—Where a complaint alleges a specific title to water by appropriation, and contains no other allegation of ownership or title to the water, the only right pleaded being a particular right not resting in grant, a paper writing offered as evidence of a grant conferring title is at variance with the allegations of the complaint, and should not be received in evidence.

ID.—CONSTRUCTION OF GRANT OF WATER RIGHT—LIMITATION OF PROPER USE.—Where the right to take water from springs not exceeding a certain quantity is granted to the owner of a mine or mill, the grant can only be construed to extend to a necessary or proper use for the purposes of the mill and mine, and not as conferring an absolute right to the water for any other purpose, or which the grantee may waste to the detriment of the grantors.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial.

The facts are stated in the opinion.

*H. S. Utley,* for Appellant.

The acts of Congress of July 26, 1866, do not apply to lands granted to a state by the United States, nor to a grant from the state to an individual, for the reason that there is no reservation made in the grant, either from the United States to the state, nor from the state to the individual, of any water rights. (*Lux* v. *Haggin,* 69 Cal. 340, 350.) The title passed from the United States to the state by virtue of the act of Congress of March 3, 1853, sections 6 and 7, and acts amendatory thereof (10 U. S. Gen. Stats. 244), acting as a grant *in praesenti,* and attached to the land in question as soon as notice of the location and designation thereof by the state authorities on behalf of the state was given to the register of the United States land-office. (*Megerle* v. *Ashe,* 27 Cal. 322; 87 Am. Dec. 76; *McNee* v. *Donahue,* 76 Cal. 499; *Doll* v. *Meador,* 16 Cal. 296.) The certificate of the surveyor general is evidence of location. (*Stanway* v. *Rubio,* 51 Cal. 41; *McNee* v. *Donahue, supra.*)

This certificate conveys to the purchaser the equitable title and the possessory right, with all the incidents and appurtenances, and the patent relates to the date of the certificate. (*Lux* v. *Haggin*, 69 Cal. 340, 429, 430.) There is no evidence to support the finding of adverse possession. To constitute adverse possession the occupation must be hostile, exclusive, and the defendants must have had notice or knowledge that plaintiff was claiming adversely. (*Thompson* v. *Felton*, 54 Cal. 547; *Thompson* v. *Pioche*, 44 Cal. 508; *Hanson* v. *McCue*, 42 Cal. 303; 10 Am. Rep. 299; *Thomas* v. *England*, 71 Cal. 458.) If plaintiff ever had the right to the waters of these springs, such right is dead by reason of nonuser for useful purposes. (Civ. Code, sec. 1411; *Davis* v. *Gale*, 32 Cal. 26; 91 Am. Dec. 554.) The court erred in granting a perpetual injunction, as the evidence shows that defendant Morgan took no water except by natural percolation, and such water belongs to the owner of the soil. (*Hanson* v. *McCue, supra;* Gould on Waters, secs. 280, 542; 1 High on Injunctions, sec. 876; *Last Chance Water Ditch Co.* v. *Heilbron*, 86 Cal. 17; *Southern Pac. R. R. Co.* v. *Dufour*, 95 Cal. 615.) Plaintiff has no use for the water, and an injunction will not lie against a riparian proprietor where there is ample water for needs of plaintiff. (Gould on Waters, sec. 534, and cases cited; *Peregoy* v. *McKissick*, 79 Cal. 574; *Alta Land Co.* v. *Hancock*, 85 Cal. 223; 20 Am. St. Rep. 217; *Barrows* v. *Fox*, 98 Cal. 66.)

*Conklin & Hughes*, for Respondent.

The complaint was sufficient, and the demurrer was properly overruled. (*Lehigh Co.* v. *Independent Ditch Co.*, 8 Cal. 323.) The appropriation having been completed for beneficial purposes plaintiff has a perfect right to the water appropriated against all the world except the owner of the soil. (*De Necochea* v. *Curtis*, 80 Cal. 397.) The waters of the springs that gather in the stream were run down in a clearly defined channel, and the appropriation by plaintiff gave it a right thereto,

which cannot be divested by the wrongful acts of the defendants. The length of the stream cuts no figure. (*Chauvet* v. *Hill,* 93 Cal. 407; *Cross* v. *Kitts,* 69 Cal. 217; 58 Am. Rep. 558.) To constitute a watercourse it is not necessary that water should run in the bed or channel of a stream all the year. (*Spangler* v. *San Francisco,* 84 Cal. 12; 18 Am. St. Rep. 158.) Plaintiff is entitled to the exclusive use of water thus appropriated without diminution or material alterations in quantity or quality, and will to that extent be protected in its rights. (*Atchison* v. *Peterson,* 20 Wall. 515; *Hill* v. *King,* 8 Cal. 336; *Butte etc. Co.* v. *Vaughn,* 11 Cal. 143; 70 Am. Dec. 769; *McDonald* v. *Bear River etc. Co.,* 13 Cal. 220; *Wixon* v. *Bear River etc. Co.,* 24 Cal. 367; *Barnes* v. *Sabron,* 10 Nev. 217.) At the time of the appropriation the land belonged to the United States government, and the rights obtained by plaintiff are secured by the act of Congress of July 26, 1866, against persons who have received patents to the lands since the enactment of that law. (U. S. Rev. Stats., sec. 2339; *Basey* v. *Gallagher,* 20 Wall. 670; *Thorp* v. *Freed,* 1 Mont. 651; *Gold Hill etc. Min. Co.* v. *Ish,* 5 Or. 104; *Ramelli* v. *Irish,* 96 Cal. 214; *Osgood* v. *El Dorado Water etc. Co.,* 56 Cal. 571.) The rights of the plaintiff, having vested prior to the certificate to Schoulder and the issuance of the patent, they could not be divested by any subsequent act of his. (*Farley* v. *Spring Valley Min. and Irr. Co.,* 58 Cal. 142.) Rights acquired by Schoulder and the Morgans through him are subject and subordinate to the prior appropriation of the waters of the Sycamore springs by the plaintiff. (*Himes* v. *Johnson,* 61 Cal. 259; *Ware* v. *Walker,* 70 Cal. 591; *South Yuba Water etc. Co.* v. *Rosa,* 80 Cal. 333; Gould on Waters, sec. 240.) The rights thus acquired by the plaintiff are the rights belonging to real estate, and are not lost by a nonuser, which does not amount to an abandonment, and is short of the statutory period for the recovery of real property. (*Dodge* v. *Marden,* 7 Or. 456.)

Haynes, C.—This suit is prosecuted by the Shenandoah Mining and Milling Company, a corporation, against A. C. Morgan, Sarah L. Morgan, and Fred Schoulder, to enjoin them from interfering with plaintiff's alleged right to take water from certain springs for the use of its mine and mill. Findings and judgment were for the plaintiff, and defendants appeal from the judgment and from an order denying their motion for a new trial.

The second amended complaint alleged that in 1882, for the purpose of securing a water supply for their quartz-mill, plaintiff took possession of certain springs known as the Sycamore springs, situated upon certain described lands about a mile from its mine and mill; that at the time it took possession of said water and springs the land upon which the springs were was government land belonging to the United States; that plaintiff at the time it so took possession began the construction of the necessary ditches, reservoirs, and pipe lines to conduct the water to the mill, and that the same were completed and in full use the same year; that from that time the plaintiff has been continually using the water for said purposes, and has been in the open, notorious, continuous, and adverse possession of said springs and the waters flowing therefrom; and that at the time of the completion of said works neither of the defendants nor any other person were using or in any way occupying said springs, or the water flowing therefrom, and that no one was then in the actual occupation of the land on which the springs are.

The complaint contains no allegation of title or ownership of said springs or water, or of its right to use the water other than as above stated.

The defendants interposed a general demurrer to this complaint, and now contend that it was improperly overruled.

The complaint is, to say the least, peculiar. It indicates a state of uncertainty in the mind of the pleader as to the particular ground upon which to base the claim of the plaintiff, and a demurrer upon that ground might

properly have been sustained. The allegation that the land on which the springs are was then government land of the United States, and that no one was then in the "actual" possession thereof, indicates that it was intended to rely upon an appropriation of the water, but does not clearly allege that the water was subject to appropriation, or that there was not some sort of prior right to the water in some one else. The word "appropriated," or "appropriation," is nowhere used, but it is alleged "that plaintiff took possession of the water and springs by entering upon the land" and constructing the necessary ditches, reservoirs, and pipe line, and thereby conducted the water to the mill. This, I think, is sufficient, as against a general demurrer, followed as it is by an alleged adverse possession of more than five years.

The first witness called for the plaintiff was the superintendent of the mine and mill, and upon his examination in chief he testified that "defendant Schoulder was present at the time the pipes were laid and reservoir constructed, and he made no objection and made no claim to the land." Upon cross-examination he testified that Schoulder gave permission to take the water from the large spring and use it; that was in the spring of 1883, a short time before the pipes were laid; that Schoulder consented to the taking of the water; that "he went with us and located the place for water reservoirs," etc. Mr. Morse, for the plaintiff, testified that Schoulder "agreed to let us have the use of the water."

M. A. Luce, Morse, Gordon, and Conklin were the owners of the mine prior to the formation of the corporation, and Mr. Luce, called by the plaintiff, on cross-examination, testified that in November or December, 1882, he had "some conversation" with Schoulder which he reduced to writing, and which was signed by Schoulder. Upon redirect examination the writing was produced and offered in evidence, to which defendants objected that it was irrelevant, incompetent, and immaterial, as the pleadings only set up a title by appropria-

tion. Counsel for plaintiff then asked the witness: "You state that your rights under that were transferred to the company?" A. "Yes, sir." Defendants objected that it was incompetent, and not the best evidence. Both objections were overruled, and the writing referred to was admitted in evidence, and reads as follows:

"I hereby grant to M. A. Luce, J. S. Gordon, E. W. Morse, and N. H. Conklin the right to take not to exceed three inches of water from the Sycamore springs, situated on my premises, where I now reside, on Mesa Grande, in San Diego county, and the right to lay and maintain piping on my premises, for the purpose of collecting the water and conveying the same to the Shenandoah mine and mill.

"Witness my hand this 25th day of November, 1882.
                              "FRED SCHOULDER."

Defendants excepted to the above rulings.

To illustrate the effect and character of the evidence, so admitted, it may be stated that the court found, substantially in the language of the complaint, that plaintiff took possession of the springs, constructed the reservoirs and pipe line, used the water, etc; that at the time the plaintiff took possession and constructed its works that the land on which the springs were was land belonging to the United States, but that Schoulder had made application to purchase it from the state of California as lieu lands, and obtained a certificate of purchase in September, 1883, and his patent in October, 1883, and that Schoulder, on December 6, 1882, "granted to Gordon, Luce, Morse, and Conklin the right to take and use from the said Sycamore springs water for the use of the Shenandoah mine and mill, to the amount not to exceed three miners' inches, which said right was by the said parties transferred to the plaintiff in this action." The court also made the further general finding that all the allegations of the complaint were true, and that those of the answer were untrue.

The evidence showed that the land in question was selected by the state in lieu of a school section and listed

to the state as early as May 6, 1882, and the location
was approved by the surveyor general, and the county
treasurer directed to receive the twenty per cent of the
purchase money from Schoulder, July 13, 1882. It is
therefore clear that it was not "government land be-
longing to the United States," as alleged in the com-
plaint, either in November, 1882, the date of the paper
received in evidence, nor in May, 1883, when the reser-
voirs and pipe line were constructed, and hence the act
of Congress of 1866 can have no application.

Not only was Schoulder's application to purchase made
before any of the transactions in this case occurred, but
his application had been formally approved, and the
court finds as a fact that Schoulder completed his pur-
chase and received a patent from the state in due time,
and his title therefore relates back to the date of his
application to purchase. Under these circumstances
no right of appropriation existed in the plaintiff, and
none could be acquired unless by grant or adverse pos-
session and use. The testimony of the witnesses, how-
ever, negatived an adverse possession, since it was
clearly shown that the use was by permission of Schoul-
der; and, therefore, without evidence of a grant the
plaintiff must have failed to establish any title which
would support an injunction against the defendants.

Counsel for respondent assume that until the state
patent issued to Schoulder it was public land of the
United States, and that a water right by appropriation
might be acquired thereon at any time before the patent
issued, notwithstanding it was occupied by a claimant
who had made application to purchase, and cite *Osgood*
v. *El Dorado Water etc. Co.*, 56 Cal. 571. The opinion
in that case supports this contention, but it is not clear
that it was necessary to the decision. It was not ac-
cepted as the law in *Lux* v. *Haggin*, 69 Cal. 255. But
in *Howell* v. *Slauson*, 83 Cal. 539, it was held that where,
by reason of the loss of school sections, a selection is
made by the state of other lands in lieu thereof, the
listing of such lands to the state conveys the legal title

as effectually as a patent would have done, and that the title so transferred relates back to the date when the selection was made and reported to the local land-office, and cuts off all subsequent claimants.

The complaint contains no allegation of ownership or title to the water, but pleads the facts upon which it relies to show title, and which are inconsistent with a claim of title by grant from the owner of the land, springs, and water. Having thus pleaded a particular right or title not resting in grant, the paper writing, which the court finds to be a grant conferring a title, was improperly received. "The plaintiff must recover, if at all, upon the cause of action as set out in his complaint, and not upon some other which may be developed by the proofs" (*Mondran* v. *Goux*, 51 Cal. 151); or, as said in *Bryan* v. *Tormey*, 84 Cal. 126, 130: "The judgment of the superior court cannot be sustained, because the case proved and found is not the case made by the complaint"; and the judgment was reversed, though it was further said that the facts proved showed a good cause of action. If, therefore, the complaint would not justify a finding of a grant based upon the paper received in evidence, it is clear it should have been excluded, and for this error the judgment should be reversed. Whether the paper in question should, in the light of all the evidence, be construed as a grant, is a question upon which we express no opinion; for if it should be construed not to be a grant, but a mere lease, license, or agreement, then the finding that Schoulder did grant to the plaintiff the right to the water is not supported by the evidence, and a reversal in that case would also follow.

Appellant has specified many particulars in which it is claimed that the evidence does not support the findings. Enough has been said to show that the findings, which follow the allegations of the complaint as to appropriation by entering upon land belonging to the United States and taking possession of the springs, are not justified by the evidence; that while the court found

that plaintiff had been in the continual use of the water, there was no finding that the use was adverse, or of any fact from which an adverse use could be implied, unless from the finding that the springs were on government land of the United States, or the finding of a grant from Schoulder, neither of which was justified by evidence admissible under the plaintiff's complaint.

The question argued by appellant as to whether the springs were of such character as to be the subject of appropriation need not be considered, since, if they were not, they might still be used under a license or grant.

It is also contended by appellants that Mrs. Morgan, Schoulder's grantee, was a *bona fide* purchaser without notice. As plaintiff did not sustain the right to the water upon which it relied in its complaint it is immaterial whether Mrs. Morgan purchased with notice of that claim or not; and whether she is chargeable with notice of some other claim of right on the part of the plaintiff, which was not alleged in this action, need not now be considered.

Many other questions are made and discussed, but, as we cannot anticipate what changes may be made in the pleadings, we cannot reasonably determine whether these questions will again arise.

In view of the facts appearing in the evidence without contradiction, that for six or more years plaintiff's mill and mine have been practically idle, that is, have not been operated more than a few days each year, if the plaintiff should, upon a new trial, be found entitled to a decree, the interests of the defendants should be more carefully guarded than they are in the decree before us.

Any reasonable construction of the grant, license, appropriation, or other right which the plaintiff may claim can only extend to a necessary or proper use for the purposes of the mill and mine, and is not an absolute right to the water for any other purpose, or which the plaintiff may waste to the detriment of the defendants.

The decree, as rendered, enjoins the defendants from using or diverting the water that "would flow" through the pipes, or interfering with the use, management, and control of it by the plaintiff. It gives the plaintiff all the water that would flow through the pipes with the present head, all the time, for any purpose, or for no purpose, and is not confined to the necessary and proper uses of the mine and mill. It is true some evidence was given on behalf of the plaintiff to the effect that the constant use of the water was necessary to the preservation of the mill, at least for the preservation of the boiler, plates, and tanks. An inquiry would probably have revealed the fact that when idle the boiler is kept empty and the plates dry; and, if the tank were so out of repair as to require the full flow of the water to keep it full when the mill was not running, it would not supply the boiler and battery when it was, and so scarcely worth preserving. If the tank is in proper repair it would require little water to keep it full. Having found that defendants are entitled to the excess of the water, its use by the plaintiff should be carefully restricted to that which is necessary.

The judgment and order appealed from should be reversed and a new trial granted.

Searls, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial granted.

McFarland, J., Henshaw, J., Temple, J.