[Civ. No. 247.   Third Appellate District.—December 3, 1906.]

## FLORA C. BAILEY, Appellant, v. JOHN I. BROWN, Respondent.

NONSUIT—REVIEW OF GROUNDS UPON APPEAL.—Where a nonsuit has been granted by the trial court, the nonsuit must be sustained upon appeal if it might have been properly granted upon any ground, regardless of the particular ground assigned by the trial judge.

ID.—VARIANCE—NONSUIT IN ACTION FOR BREACH OF PROMISE TO MARRY —DEPARTURE OF PROOF FROM PLEADING.—In an action for breach of promise of marriage, where the complaint alleged that defendant agreed to marry the plaintiff upon her request at any time, and the proof showed that he agreed to marry her after and not before the death of her mother, who is still living, there is an essential difference between allegation and proof, which entitles the defendant to a nonsuit on the ground of variance, and failure to prove the contract alleged, though a particular ground was stated by the trial judge which is not here passed upon.

ID.—RECOVERY LIMITED TO CAUSE OF ACTION ALLEGED.—The plaintiff must recover, if at all, upon the cause of action alleged, and not upon some other cause of action which may be developed in the proofs; and where there is a failure to prove the cause of action alleged, and another is proved, if the plaintiff does not obtain leave so to amend his complaint as to make it conform to the proofs, the defendant may have his nonsuit, though the testimony to a different cause of action was admitted without objection.

ID.—GROUND STATED BY TRIAL JUDGE—INVALIDITY OF CONTRACT PROVED —RESTRAINT OF MARRIAGE—QUESTION RESERVED.—The special ground of nonsuit stated by the trial judge that the contract proved is void as against public policy, and as being in restraint of marriage, is reserved and left open as being *res integra* in this state. [McLaughlin, J., concurring specially with trial judge.]

APPEAL from a judgment of the Superior Court of Mendocino County.   J. L. White, Judge.

The facts are stated in the opinion of the court.

A. J. Thatcher, and Weldon & Held, for Appellant.

McNab & Hirsch, and Thomas, Pemberton & Thomas, for Respondent.

CHIPMAN, P. J.—Plaintiff brings the action to recover damages for the alleged breach of defendant's agreement to marry her. Upon the conclusion of plaintiff's evidence the court granted defendant's motion for a nonsuit. The appeal is from the judgment on bill of exceptions.

The grounds of the motion for nonsuit were: 1. That the contract testified to is at fatal variance with that alleged in the complaint; 2. That the contract is void as against public policy; and 3. That there is no breach of the contract shown.

The court granted the motion on the ground that the contract testified to was "against public policy and in restraint of marriage." No other ground was mentioned in the order made by the court. It is well settled, however, that a nonsuit must be sustained if it might have been properly granted upon any ground. The trial judge may or may not place his judgment upon sufficient grounds. His action will be upheld if it can be justified on any ground, whether made a ground of the motion or not. (*Miller* v. *Wade,* 87 Cal. 410, 412, [25 Pac. 487] ; *Davey* v. *Southern Pac. Co.,* 116 Cal. 325, [48 Pac. 117].)

The complaint avers that "on request the defendant promised to marry the plaintiff, and that the said promise has been from time to time renewed."

It appeared from plaintiff's testimony in chief that the question of marriage between her and defendant was first "talked about" by them in 1896, but it is not shown to have taken any definite form until January 5, 1899. Plaintiff testified: "At that time we were talking about some one being engaged to be married, and he said to me, 'Let you and me get engaged to be married,' and I said, 'All right, I am willing.' " On cross-examination she stated the matter more definitely. She testified: "The time agreed upon that we were to be married was after my mother's death. That arrangement was not made at the time of our engagement on January 5, 1899, it was subsequent. My mother is still living. . . . After our engagement it was understood that we should not be married until after my mother's death and that has always been the understanding since that time. . . . I made no immediate plans or preparations for our marriage, which was owing to the fact that we had agreed not to be married until after my mother's death. . . . I said

we were to be married when my mother should die.'' It was
admitted by the pleadings that defendant had married an-
other woman shortly before the action was commenced.

It seems clear enough from the complaint that the contract
was that defendant agreed to marry plaintiff upon her request
at any time. But the contract as testified to was that he
agreed to marry her after and not before the death of her
mother, who is still living. According to the complaint the
marriage was to take place at plaintiff's option and without
further condition. Under the contract proven the marriage
was not to take place until the happening of an important
event over which neither party had any control and which
might not happen for many years. Indeed it might not hap-
pen at all, for plaintiff's mother might outlive one or both
the parties to the action. There is an essential difference
here between allegation and proof in which case the rule is
that defendant is entitled to a nonsuit on the ground of var-
iance. (*Owen* v. *Meade,* 104 Cal. 179, [37 Pac. 923], and
cases there cited.) The rule is sometimes thus stated: that
the plaintiff must recover, if at all, upon the cause of action
alleged and not upon some other which may appear from the
proofs. (*Shenandoah M. Co.* v. *Morgan,* 106 Cal. 409, 417,
[39 Pac. 802] ; *Davis* v. *Pac. Tel. Co.,* 127 Cal. 312, 321, [59
Pac. 698].) Unless plaintiff obtained leave to so amend his
complaint as to conform to the proofs, the defendant may
have his nonsuit, though the testimony was admitted without
objection. (*Tomlinson* v. *Monroe,* 41 Cal. 94; *Elmore* v. *El-
more,* 114 Cal. 516, [46 Pac. 458].)

There was not only a variance between the proof and the
allegation, but a failure to prove the cause of action alleged.
It may be said that the point is not now available to defend-
ant, for the reason that he has by his marriage made it im-
possible for him to perform the contract as proven. We
think, however, that it was still incumbent upon plaintiff to
make her complaint conform to the proofs by amendment,
upon leave of the court, or under the consequences by nonsuit.
In any view of the case and whatever the effect of defendant's
marriage the *allegata* and *probata* must correspond. (*Owen*
v. *Meade,* 104 Cal. 179, [37 Pac. 923].)

We express no opinion upon the question as to whether the
contract was in restraint of marriage and against public
policy. The question is, so far as we have discovered, *res*

*integra* in this state and, as the judgment may rest upon the point just disposed of, we prefer to leave it open.

Several errors are assigned in the exclusion or admission of evidence and error also as to permitting defendant to amend his answer. There was no evidence excluded which reflected any light upon the contract or which affected the question of variance above discussed. The rulings, even if erroneous, were harmless in view of that question. The amendment of defendant's answer was within the discretion of the court.

The judgment and order are affirmed.

Buckles, J., concurred in the judgment sustaining the nonsuit.

McLAUGHLIN, J., Concurring.—I concur in the order affirming the judgment. In my opinion the evidence clearly demonstrates that the plaintiff could not recover even if a complaint was filed containing the most elaborate averments in consonance with the proof. According to plaintiff's testimony the defendant only agreed to marry her upon the death of her mother, who is still in the land of the living. This event might not occur during the lifetime of either of the contracting parties. The contingency upon which the fulfillment of the promise rests is so far beyond the control of the parties, and is so uncertain, that no valid contract could exist. How can it be said that either of these parties are bound by a promise which neither might ever be called upon to fulfill? How could a contract to marry exist when the promisor might never be under a present obligation to marry the promisee, or *vice versa?* If this good mother should live to a very ripe old age, as mothers sometimes do, no human could tell what might happen. Either of the parties might be waiting for the other, harp in hand, beyond this vale of tears, or both might pine away and die before this promise of future connubial bliss could ripen into a cause of action enforceable in earthly courts. Then, too, age creeps on all apace, and if the contingency which could make this promise quick with life, as a legal obligation performable presently, was delayed through many weary years, waning desire and ripened judgment might prompt the parties to acknowledge the wisdom of that rule of public policy which forbids long-continued restraint upon marriage, and frowns upon a contract tantamount to an

indefinite postponement thereof. And if the roseate dreams of youth survived the blasting frosts of age, decrepitude, mental or physical incapacity, infirmities due to weight of years might be urged as defenses not now available to this defendant.

Counsel for appellant, whose ability cannot be questioned, and whose industry has always afforded welcome aid to this court in the consideration of questions by them presented, have cited cases from other jurisdictions supporting a doctrine at utter variance with the views above expressed. But I am unwilling that a rule so repugnant to my reason and so fraught with uncertainty and temptation, should find implied sanction in a decision here rendered. In one of these cases it was said that such a contract was not a restraint upon marriage because the restraint was terminable at the will of the parties. This reasoning does not commend itself to my judgment. To say that restraint might be ended by mutual consent of the parties is to admit the existence of such restraint while such consent is withheld. To say that parties may obviate an objection based on rules of public policy, is to admit that some new promise or agreement is necessary to legalize a compact between them. In the case at bar could either of the parties compel the other to give that consent essential to terminate the restraint imposed by their original agreement? Could either of them demand the fulfillment of the mutual promise before the stated contingency happened? These questions must be answered in the negative. Any contract, not wholly denounced by rules of law, may be made enforceable and legal by consent of the parties, no matter how absolutely impotent it might be as originally drawn or made. Parties to a verbal agreement falling within the statute of frauds might consent to reduce their agreement to writing. Parties to a lease of premises for an immoral purpose might consent to remove the taint of immorality, or parties to a fraudulent agreement might consent to waive or remove the taint of fraud. But the legality or enforceability of a contract does not depend upon what the parties thereto might have done or may still do, but upon what they did do at the time the agreement was made. The fact that an invalid contract may be made valid by consent of the parties does not prevent either of the parties from withholding such consent, nor does it prevent either of them from urging such invalidity

when the other sues to recover damages for the breach of a contract which is *nudum pactum.*

God alone can tell whether a promise to marry upon the death of a third party will become potent as a personal contractual duty during the lifetime of either of the parties to it. He alone can say whether such a promise will restrain or postpone marriage for one or many years. If a promise to marry was expressly made performable only after the lapse of ten or twenty years, few courts would be found willing to lend legal sanction to an agreement so at variance with public policy. And what finite being can say that a promise of the character here under consideration would become performable even within twenty years? Human laws deal only with finite knowledge and finite things. They do not attempt to probe the secrets of the Infinite, nor make the solution of infinite problems a test of human contractual rights. Hence, a promise to assume marital relations with another cannot be made contingent upon the Infinite will concerning the span of a third life, without creating uncertainty which the finite mind can neither unravel nor dispel.

Waiving these considerations, however, and assuming that the compact here proven amounted to a contract untainted by uncertainty and uncondemned by public policy, I am still unable to see how a cause of action could be stated. True, the promisor still lives and is married to another, but, according to this record, plaintiff is still blessed with the care, love and companionship of her mother. The wife of defendant's present choice may precede that mother to the bourne "whence no traveler returns," or divorce, though suspended for one year by our beneficent laws, may sever the existing nuptial tie, and render respondent free to embark on the matrimonial sea for another voyage before the plaintiff can call upon him to take his place by her side. He may, when the oft-mentioned contingency happens, be willing or even anxious to claim the plaintiff as his bride, and if so how could she complain?

He did not agree to abstain from matrimony until her mother obligingly stepped from the stage of human action, nor did he promise to refrain from loving and cherishing another during the interval which might elapse before his promise could become a present obligation, for the breach of which he could be mulcted in damages. He might feel the need of

wifely counsel and comfort during the years and years which might pass away before the plaintiff would be bereft of her parent. True, inconveniences, many and annoying, might result from a marriage *ad interim.* Adult sons and daughters, fruits of his union with another, might tearfully protest against the fulfillment of his ancient trothplight, but if he should be free of hand, faithful of heart and ready to abide the promise of his virile youth when plaintiff's mother dies, the plaintiff must needs be content. She can only call upon him to perform his promise when the time arrives, and meantime she must forego compensation in ducats for the breach of a promise he has not yet broken. Her mother still lives and she must wait until a daughter's filial love and care no longer avails to stay the hand of the destroyer. If, in the fullness of time, this should happen, during the lifetime of both plaintiff and defendant, she might at least be able to prove a breach of this promise, which, in my opinion, was void *ab initio* and is void *in toto.*