[Civ. No. 7050.   Third Dist.   Aug. 2, 1944.]

E. A. VON GOERLITZ, Appellant, v. I. D. TURNER et al.,
Respondents.

Manson & Allan and Dudley Miller for Appellant.

Daniel S. Carlton for Respondents.

PEEK, J.—The plaintiff herein appeals from an order granting defendants' motion for nonsuit, and from a decree quieting defendants' title to the property in controversy.

Plaintiff by his action entitled "Complaint in Claim and Delivery" alleged the conversion by defendants of approximately 200 tons of chrome ore of the value of $4,000, and prayed for judgment against defendants for the possession of the ore or the value thereof. The action was originally filed in the county of Siskiyou but was subsequently transferred to the county of Shasta for trial. Defendant Turner filed his answer denying the ownership and right of possession by plaintiff to the ore, alleged title and possession in himself, and filed a cross-complaint to quiet his title to the ore. The answer of the defendant Brown likewise denied ownership in the plaintiff. At the conclusion of the trial the court gave judgment as previously mentioned.

From the facts as disclosed by the record it appears that F. Brown and Dee Thomas were the owners of the Elk Chrome Mine situated in Siskiyou County. On May 1, 1941, they entered into an agreement with one L. J. Campbell, which agreement is as follows:

"East Fork Chrome Mine
& Red Rock " "
    Elk Creek

Buyer
L. J. Campbell

Happy Camp Mining District.

The Undersigned owners of the chrome mine have agreed to let this chrome mine out on Ten per cent 10

per cent royalty payable at the nearest rail road point. To be weighed on public scales.

This mine is to be worked continuous as price pre-va*lies* until mine is worked out.

Price or weather conditions only stop

Dated May 1st 1941
  Dee Thomas
  Arnold Thomas

                              Fred W. Brown
                                (Endorsed)

                  Witness L. J. Campbell
                          H. F. Brown"

It is admitted that nothing was done under the May agreement. Thereafter Campbell and a new associate, Karl F. Autenreith renewed negotiations with the owners, and a second instrument was executed on July 22, 1941, as follows:

"                                    7-22-41

Happy Camp Mining Dist.
Elk Chrome Mine
Located in elk creek drain

We the parties or miners to operate said chrome mine Less J. Campbell & Karl F. Autenreith will start road as soon as bulldozer can get on property.

We will start operation as soon as road is completed.

Will pay 10% at railroad price. Each car to be paid for at loading point.

This mine will be operated as long as ore can be found and price stays up.

    Mine Owners                    Operators
    Dee Thomas                   L. J. Campbell
    F. W. Brown                 Karl F. Autenreith"

The plaintiff is the assignee of Campbell by an instrument dated September 11, 1941, and the assignee of Autenreith by an instrument dated November 15, 1941.

According to the testimony of the defendant Thomas, the agreement of July 22, 1941, was terminated on or about August 9, 1941, for failure of Campbell and Autenreith to perform any of the terms of that agreement.

Shortly after the termination of said agreement the defen-

dants Brown and Thomas executed a new agreement with the defendant Turner. He immediately took possession of the property, and during the early part of September, 1941, commenced movement of the ore from the property and continued so to do until approximately 200 tons had been taken and placed in the United States Government stockpile in the city of Yreka.

By virtue of the testimony of plaintiff that he knew the instrument of May 1st had been superseded by the instrument of July 22d we may dismiss the first agreement from further consideration and direct our attention to the second agreement.

In reply to plaintiff's first contention that the agreement of July 22, 1941, was a lease, the respondents maintain that the instrument did not create a leasehold or other interest in the mine but was one of operation only.

The test, as this court stated in *Shaw* v. *Caldwell*, 16 Cal.App. 1 [115 P. 941], "whether an agreement for the use of real estate is a license or a lease is whether the contract gives exclusive possession of the premises against all the world, including the owner, in which case it is a lease, or whether it merely confers a privilege to occupy under the owner, in which case it is a license, and this is a question of law arising out of the construction of the instrument."

It is readily apparent from the wording of the second instrument that it did not create a right in the plaintiff's assignors to the exclusive use of the mine for a fixed term nor did it create an interest in the mine or the ore. Thus, as the trial court found, it "was merely an agreement to operate said mine by said Karl Autenreith or L. J. Campbell, and/or Less Campbell, for and on behalf of F. Brown and Dee Thomas."

That there must be an intention evidenced by the instrument to establish the relationship of the landlord and tenant, is likewise well established. (*Beckett* v. *City of Paris Dry Goods Co.*, 14 Cal.2d 633 [96 P.2d 122]; 15 Cal.Jur. 615.) No such intention can be found in the instrument under consideration. It merely provides for the operation of the mine on shares with provision as regards the compensation of the parties. In effect it is but a contract of employment. (*Hudepohl* v. *Liberty Hill Con. Mining & Water Co.*, 80 Cal.

553 [22 P. 339]; 17 Cal.Jur. 431; *Michalek* v. *New Almaden Co., Inc.,* 42 Cal.App. 736 [184 P. 56].) The agreement created no personal interest or right of exclusive possession, either in the mine or the ore, in plaintiff or his assignors. ■ Being merely a license to take ore from the mine, plaintiff's right thereto could arise only if and when it had been removed by him or his assignors. (*Wheeler* v. *West,* 71 Cal. 126 [11 P. 871].) ■ If another removed the ore, plaintiff could have no complaint, as his right of severance and removal was not exclusive "against all the world, including the owner." (*Shaw* v. *Caldwell, supra.*) ■ Inasmuch as the agreement was but a license to operate the mine it was revocable at the will of the defendants (*Wheeler* v. *West, supra*), and, as the trial court found, was revoked by a written notice of termination mailed by the defendants Brown and Thomas to plaintiff's assignors on or about August 9, 1941.

Appellant's second contention, that "Claim and Delivery," was a proper form of action for the recovery of the ore, is also untenable. ■ It is true, that under our code system of pleading, the distinction between forms in civil actions has been abolished; but the distinction between causes of actions, at least for some purposes, still remains, and on essential allegations of a complaint, remains the same as at common law.

■ By paragraph I of his complaint plaintiff alleged that at all times therein mentioned he was the "owner of and entitled to the possession of that certain personal property . . . described as follows: Two Hundred (200 Tons, . . . of Chrome Ore. . . .'' Paragraph II alleged that defendants, without right and without the consent of plaintiff, had taken possession of such personal property and detained it without plaintiff's consent, to his damage in the sum of $4,000. Paragraph III contains the customary allegations and prayer relative to fictitious defendants. He then prays for a judgment against defendants for the possession of the property, or, in case delivery cannot be had, for the value thereof, the sum of $4,000.

The evidence in support of such allegations conclusively shows that neither plaintiff nor his assignors were ever in possession of the mine, nor had any actual work been done thereon; that the defendant Turner, immediately upon the execution of his agreement with the owners, went into possession of the mine; that he was in possession thereof at and

prior to the time the action was filed by plaintiff, and that prior to the time he removed the ore it was in its natural state.

Under such circumstances both the complaint and the evidence in support thereof were fatally defective.

█ It was essential to plaintiff's case to first establish his title to and possession of the property involved, as "there can be no recovery of wood or ore or hay in specie, or of its value in an action of trover, when it has been taken from land in possession of the defendant under claim and color of title asserted in good faith." (*Ophir Silver Min. Co.* v. *Superior Court,* 147 Cal. 467, 477 [82 P. 70, 3 Ann.Cas. 340]; 17 Cal. Jur. 511, 512.)

█ It is the well established rule that the allegations of a complaint and the proof thereof must be in agreement. This rule is based upon the fundamental proposition that a party must recover, if at all, according to his pleadings, rather than upon some other or different cause which may have been developed by the proof. █ When such is the case there is presented a material variance, and the defendant is properly entitled to a nonsuit even though the objection might have been obviated by amendment. (*Bailey* v. *Brown,* 4 Cal.App. 515 [88 P. 518]; *Elmore* v. *Elmore,* 114 Cal. 516 [46 P. 458]; 9 Cal.Jur. 561; 21 Cal.Jur. 267.)

Plaintiff's third charge is directed against what is alleged to have been the erroneous admission of evidence by defendants which plaintiff alleges varied the terms of the agreement of July 21, 1941.

If, as we have concluded, the agreement was not a lease but a license to operate the mine, and therefore revocable at any time, then in view of the facts and circumstances as disclosed by the pleadings and the record, the plaintiff was precluded from maintaining an action for the ore or for its value, and therefore such contention by plaintiff becomes wholly immaterial to a disposition of this case.

█ Plaintiff's final contention is that the court erred in denying his motion to strike one item from defendant's cost bill. The motion, which was not verified, or supported by affidavits, or other evidence, attacks an item relating to the mileage traveled by one witness, on the ground that it was "not properly chargeable as a cost in said action."

The defendants' verified cost bill was prima facie evidence that the items therein set forth were necessarily incurred. Plaintiff, by his motion, assumed the burden of showing wherein the item was ''not properly chargeable'' or was otherwise improper for the reasons stated in said motion. (*Fay* v. *Fay*, 165 Cal. 469 [132 P. 1040].) The record discloses no showing whatever was made by plaintiff beyond the filing of his motion with the clerk of the court. ██ The determination of the items allowable as costs is largely a question for the trial court in its discretion, and when the record is devoid of any showing of an improper exercise of such discretion this court will not disturb such determination on appeal. (*Puppo* v. *Larosa*, 194 Cal. 721 [230 P. 440] ; *Murphy* v. *F. D. Cornell Co.*, 110 Cal.App. 452 [294 P. 490].)

The judgments and order are affirmed.

Adams, P. J., and Thompson J., concurred.