[Civ. No. 14107.   First Dist., Div. One.   Oct 4, 1949.]

FEODORA LEWIS, Appellant, v. SOUTH SAN FRAN-
CISCO YELLOW CAB COMPANY (a Partnership) et
al., Respondents.

E. C. Mahoney for Appellant.

Hoge, Pelton & Gunther, Harry N. Grover, Leo V. Killion
and Reginald M. Watt for Respondents.

BRAY, J.—From a judgment entered after order granting
defendants' motion for nonsuit, plaintiff appeals.

The sole question presented is whether there was any evi-
dence to support the allegations of plaintiff's complaint.

### COMPLAINT

While the defendants set forth in the complaint were
the South San Francisco Yellow Cab Company, a partnership,
Walter Ryan and three Does, answers were filed by Walter

Ryan, doing business as South San Francisco Transit Company, and Hughlan T. Phillips, "sued as 1st Doe" (actually he was sued as 3d Doe). No point is made of these discrepancies and hereafter they will be disregarded.

The complaint, after alleging operation by defendants of a line of cabs for transportation of passengers for hire, states that at a certain time plaintiff entered one of defendants' cabs "and was received by defendants as a passenger of said cab for the journey she intended to make. That instead of following her instructions, and disregarding her protests, defendant, Third Doe, drove the cab to a secluded spot west of El Camino Real, in San Bruno, and made improper suggestions and advances to plaintiff. That plaintiff then and there became alarmed at this wrongful conduct of said defendant and believed that she was in danger of being attacked and assaulted by said defendant. That she then and there prevailed upon said defendant to stop the cab, which he did, and she immediately alighted therefrom and started across a field to get away from defendant's threatened assault and search for help. That it was a very dark night and a short distance from said cab plaintiff stepped into a depression and fell to the ground and as a result thereof plaintiff broke most of the bones in her left foot." She then alleges that "plaintiff's injury was the proximate result of said defendant's wrongful conduct" and sets forth the extent of the injury, together with allegations of damage resulting therefrom.

A reading of the complaint shows that its gravamen is that the wrongful conduct of the cab driver caused plaintiff to fear that she was in danger of being attacked by him, causing her to flee from his threatened assault, as a result of which she was injured. Now, let us see if there are any facts to support this issue.

### FACTS

Plaintiff was the only witness on the question of liability. She testified that she was a waitress employed in San Francisco. On a day early in September, 1946, after attending an evening picture show, she found, on arriving at the Greyhound Bus Depot, that she had just missed the bus to San Bruno, where she resided. She then decided to take a bus to South San Francisco and a taxicab from there to her home. She arrived at the bus station in South San Francisco about 12 midnight. She then went to the defendants' cab stand and stated to defendant Phillips, hereafter referred to as the

driver, whom she knew, that she wanted a cab to take her to her home in San Bruno. He said he would be right back and she waited for him. In a few minutes he returned having with him a sailor, whom she had seen a lot of at one time but whom she had not seen for a year or more. The sailor asked her if she wanted to go out that night, "and I said no that I was going home and I said 'If you want to ride along with me, that is all right.' So, I guess the cab driver—I gave him my money as we walked out the door." She paid the driver $1.00 as fare. Plaintiff sat in the front seat between the driver and the sailor. There was another sailor and a girl in the back seat. They got off at Lindenville, which was about a mile from plaintiff's home. The sailor had his arms around her and was kissing her, to which plaintiff objected. When the cab was about two blocks from her home the driver made a U-turn and said he "wasn't taking me home." At first plaintiff thought he was joking. When she told him to turn back as she wanted to go home he "just kept laughing and driving on." At Sneath Lane he stopped the cab and said he "wasn't going to drive any further and told me to get out with the sailor." The sailor had not said anything about driving up there. After the cab stopped plaintiff told them she "had to go to the bathroom" and the driver said that she could stay "here." She said "No, I will be back," got out of the cab, started running behind it, and fell into a ditch or culvert, breaking her foot. She crawled out to where the ground was level. The driver and the sailor heard her, did all they could to render assistance, and took her to the hospital. Plaintiff thought the driver was "crazy" for stopping and saying he was not going to drive any further. The driver made no advances towards plaintiff during the evening, nor did he use any amorous terms towards her. He remained in the driver's seat when she left the cab. He did suggest that she go out and have a good time with the sailor. The allegation in the complaint to the effect that the driver made advances towards her or that she was in fear of being attacked by the driver was not true. She testified that in these allegations she meant the sailor, not the driver. The driver made improper suggestions but not for himself. Plaintiff had worked for defendant cab company as a dispatcher before the accident, and then again some time afterward, before she filed suit, she worked for it about two months. Plaintiff's testimony shows very definitely that, contrary to the allegations of her complaint, she was not injured through fear of an attack by

the taxi-driver, but through desire to avoid the attentions of the friend she had invited to ride with her.

In her opening brief plaintiff relies principally on *Terrell* v. *Key System,* 69 Cal.App.2d 682 [159 P.2d 704]. There, a passenger was pushed off a moving train in the East Bay during a brawl by other passengers, receiving injuries. After setting forth the rule that a carrier of persons for reward must exercise the utmost care and diligence for the safety of its passengers consistent with the character and mode of conveyance adopted and the practical operation of the carrier business, the court held that the passenger "was entitled under his contract of carriage to be where he was and to be protected from the unprovoked assaults of his fellow passengers by the carrier's exercise of the high degree of care required of it to carry him safely." (P. 689.) Had plaintiff here pleaded a cause of action based on the carrier's failure to protect her from her fellow passenger, her testimony, if believed, would have supported it. But she did not so plead. She charged, not a failure to so protect her, but a direct attack by the cab driver, which she admitted at the trial did not occur. While she alleged and proved a disregard of her instructions by the driver, such disregard was not the cause of her injuries. The cause was either her fear of an attack by her fellow passenger or her desire not to accept his attentions.

Generally, a rather wide divergence in the evidence from the allegations of a cause of action is permitted, but where, as here, an entirely separate set of facts constituting an entirely different cause of action from that pleaded appears, the trial judge should grant a nonsuit. On a motion for nonsuit, the court must find all the facts stated by plaintiff to be true, and give her the benefit of every reasonable inference therefrom. In so doing we reasonably cannot find in her rather peculiar story any support for the cause of action as pleaded. "[T]he plaintiff must recover, if at all, upon the cause of action alleged and not upon some other which may appear from the proofs." (*Bailey* v. *Brown,* 4 Cal. App. 515, 517 [88 P. 518].) "Where, however, the allegation of the claim or defense to which the proof is directed, is unproved, not in some particular or particulars only, but in its general scope and meaning, it is not to be deemed a case of variance, within the last two sections, but a failure of proof." (Code Civ. Proc., § 471; see, also, *Von Goerlitz* v. *Turner,* 65 Cal.App.2d 425 [150 P.2d 278].)

It is doubtful if the court could have allowed the complaint to be amended for the reason that such amendment probably would have stated a new cause of action. (*Lambert* v. *McKenzie*, 135 Cal. 100 [67 P. 6].) In any event, the court properly granted the nonsuit as the plaintiff failed to request permission to amend her complaint to conform to the proof. As said in *Von Goerlitz* v. *Turner, supra,* at page 431: "It is the well established rule that the allegations of a complaint and the proof thereof must be in agreement. This rule is based upon the fundamental proposition that a party must recover, if at all, according to his pleadings, rather than upon some other or different cause which may have been developed by the proof. When such is the case there is presented a material variance, and the defendant is properly entitled to a nonsuit *even though the objection might have been obviated by amendment.* [Citing cases.]'' (Emphasis added.) "Unless plaintiff obtained leave to so amend his complaint as to conform to the proofs, the defendant may have his nonsuit, though the testimony was admitted without objection." (*Bailey* v. *Brown, supra,* at p. 517.)

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 28, 1949. Carter, J., and Traynor, J., voted for a hearing.