[Civ. No. 17799. Third Dist. Nov. 6, 1979.]

LOUIS W. MEDER et al., Plaintiffs and Appellants, v. SAFEWAY STORES, INC., Defendant and Appellant.

498

COUNSEL

Thomas C. Perkins for Plaintiffs and Appellants.

Rowland & Parker, Archie G. Parker and Jeffrey G. Olsen for Defendant and Appellant.

OPINION

**BLEASE, J.**—Defendant, Safeway Stores, Inc. (Safeway), appeals from a judgment entered after a jury found it liable to plaintiff, Louis W. Meder, in the sum of $40,000 for malicious prosecution. Plaintiffs, Louis W. Meder and Pauline Meder (Mrs. Meder), appeal from the judgment awarding costs to Safeway incurred in obtaining a partial pretrial judgment on the pleadings against plaintiff, Pauline Meder.

Defendant contends on appeal that its stipulation in chambers to a jury of six failed the requirement of article I, section 16, of the California Constitution that such an agreement be made in open court. We conclude that defendant is estopped to raise this issue. Defendant also contends that there was an independent law enforcement investigation of the facts precluding liability. We disagree.

Plaintiffs contend that the defendant's cost bill was not timely filed following a partial pretrial judgment on the pleadings. We disagree.

As originally filed in June 1974, the complaint alleged three causes of action and included Louis Meder, Pauline Meder, Security Patrol Cart Return, a copartnership, and Dale R. Kenyon as plaintiffs.[1] On August 2, 1976, Safeway obtained a summary judgment in its favor as to one cause of action and a judgment on the pleadings as to the other two. On September 13, 1976, the court granted plaintiffs' motion for a new trial as to the summary judgment and allowed Louis W. Meder to alone file an amended complaint for malicious prosecution. Judgment on the pleadings as to the other allegations in the complaint was confirmed for failure to state a cause of action against Safeway. Consideration of Safeway's cost bill was deferred without prejudice to a later filing.

The case came to trial on the amended complaint February 15 through 17, 1978, and on March 2, 1978, Safeway submitted a memorandum of costs incurred in obtaining the earlier judgment on the pleadings. Plaintiff Louis W. Meder's motion to strike Safeway's memorandum as improper and untimely was denied along with Safeway's motions for a new trial and for judgment notwithstanding the verdict on April 19, 1978. These appeals followed.

I

The dispute between plaintiffs and Safeway concerned the actions of Safeway officials in reporting a theft to the police and the subsequent prosecution and acquittal of plaintiff, Louis W. Meder. In 1973, plaintiffs were engaged in a cart collection business called Security Patrol Cart Return, picking up abandoned shopping carts and delivering them back to the stores from which they were taken. Some of the carts were returned the same day they were picked up; others were taken to a warehouse for sorting and returned to the various stores in batches as they accumulated. In March of 1973, after protracted negotiations with Safeway personnel, plaintiffs and their associates contracted to pick up and deliver Safeway shopping carts to 10 to 12 local stores. Safeway personnel involved in the negotiations included Arnold Papst, a regional security manager for the corporation. One of the stores, number 155, used a distinctive high-rise "baskart" unlike any other type of cart.

[1] We infer this information from testimony, pretrial orders and judgments in the cause; the complaint is not included in the record before us.

Most of the carts recovered by plaintiff were store 155's high-risers and Safeway terminated the contract in mid-June 1973 because the cost of recovery was too much for one store to bear. Safeway instructed the manager of store 155 to make a greater effort to recover the store's carts.

Plaintiff, Pauline Meder, sent out statements for Security Patrol Cart Return and received phone calls on deliveries of carts to the stores. Dale Kenyon was employed to collect the carts in plaintiffs' pick-up truck and bring them either to plaintiffs' yard or to the warehouse for later return to the stores. On December 17, 1973, Kenyon told Mrs. Meder that people in the area where he picked up carts for other stores were complaining about Safeway carts scattered about the neighborhood. Safeway's meat cutters were on strike at that time and store 155 was being operated by managerial employees.

Mrs. Meder called Arnold Papst around noon on December 17, told him about the scattered carts and offered to have them picked up and delivered for $2 per cart. Her impression was that he agreed to the proposal and told her to collect the carts and store them in the warehouse where they would be protected from the weather until he could get authorization for payment. Papst told police and later testified that he declined Mrs. Meder's offer because he had no authority to make such an arrangement on his own and that he merely inquired as to the number and whereabouts of the carts so that he could have them picked up by store employees. When an afternoon search by regional and store personnel unearthed only two to three carts in the neighborhood, Papst asked his assistant to check plaintiffs' warehouse. The next day the assistant reported he had looked through a window in the warehouse and had spotted a number of Safeway carts inside. Papst called a Safeway attorney and was advised to make a police report on the location of the missing carts. Papst did so and later met police at the warehouse on the afternoon of December 18. After looking through the window, the police departed to obtain a search warrant.

Unaware of his wife's conversation with Papst, Louis W. Meder arrived at the warehouse around 5 p.m. to check for phone messages. Papst and his assistant told plaintiff they had talked to his wife and demanded the carts. Plaintiff told them he would not release the carts until he talked to his wife to see what arrangements she had made. The conversation was not pleasant and plaintiff left after being told the po-

lice would be called. He was unable to talk to his wife until the next morning.

The police returned to the warehouse around 7:15 p.m. and executed the search warrant around 9 p.m. after a locksmith opened the warehouse. Forty Safeway carts were found in the warehouse and released to Papst. One was marked by police as evidence and kept in Papst's office and the others were returned to store 155. Papst later informed police he felt the Meders had hidden more carts since the store inventory was still short.

Plaintiff, Louis W. Meder, was arrested by the police in March 1974 and charged with grand theft reduced to misdemeanor theft and receiving stolen property. He pled not guilty and was acquitted after trial of both charges. A civil suit followed.

## II

Defendant Safeway first contends that, notwithstanding its stipulation and participation in the trial without objection, it did not waive a jury of 12 persons and a verdict of three-fourths of the jury in the manner required by law.

The facts are not in dispute. After consulting with his client, counsel for defendant stipulated in chambers prior to trial to a six-person jury. At the close of the trial, the court instructed the jury that four of the six jurors must agree on a verdict. Defendant admits in its declaration in support of the motion for new trial that the verdict was unanimous, that the jury was polled and that all six members affirmed the verdict as their own.

There is no indication anywhere in the trial record that defendant was dissatisfied with the earlier stipulation; the trial court stated and the record reflects that the jury was duly accepted, impaneled and sworn to try the cause. Defendant first raised the issue of a six-person jury in its notice of intention to move for a new trial. The motion was denied. The court found that the "jury situation" was agreed to by the parties, including the number of jurors and the number needed for a verdict. The motion for new trial on that and other grounds was denied.

The defendant having agreed to and participated in a trial by a jury of six and having lost now wants another trial with a jury of twelve. It

seeks more than a second bite of the apple; it wants a second and larger apple. The law is not so generous.

Defendant relies upon the provisions of article I, section 16, of the California Constitution, which provide: "Trial by jury is an inviolate right and shall be secured to all, but in a civil cause three-fourths of the jury may render a verdict. A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel. In a civil cause a jury may be waived by the consent of the parties expressed as prescribed by statute. [¶] In civil causes and cases of misdemeanor the jury may consist of 12 or a lesser number agreed on by the parties in open court."

We do not reach the issue of whether a stipulation that four of six jurors may render a verdict satisfies the constitutional provision that ". . . in a civil cause three-fourths of the jury may render a verdict." The jury verdict was unanimous. Assuming that it was error to so stipulate, the error was clearly harmless.

We turn to defendant's claim of constitutional error. The defendant does not focus upon the article I, section 16, provision that the jury size be *"agreed on* by the parties in open court." (Italics added.) Rather, it relies by analogy upon cases strictly interpreting the constitutional requirements for the *waiver* of a jury.

There is a paucity of cases on the precise issue before us.

In the early case of *Hitchcock v. Caruthers* (1890) 82 Cal. 523 [23 P. 48], the court said: "Appellant asks for a new trial, because it appears that the case was tried with only eleven jurors. But we will not presume the extraordinary spectacle of a court compelling a party to go to trial against his consent with less than twelve jurors upon a record which not only fails to show any objection or exception on the point, but which does state that 'a jury of eleven persons was regularly impaneled and sworn to try said action.'" (*Id.,* at p. 526.)

The *Hitchcock* case is unilluminating but the legislative history of article I, section 16, shows solicitude for its procedural requirements.

Article I, section 16, emanates from the provisions of article I, section 7, of the California Constitution of 1879. Prior to 1879, the matter of jury size was set forth in section 159 of the Practice Act and re-

quired the consent of the parties to any number less than 12. As interpreted by the Supreme Court, the "...consent must be express, and entered at the time in the minutes of the Court. It cannot be inferred from the mere absence of the adverse party." (*Gillespie v. Benson* (1861) 18 Cal. 409, 411.)

Presumably, the earlier statute and the *Gillespie* case were understood at the time of the Constitutional Convention of 1879 and the framers there intended to require that an agreement to a less-than-12-person jury be formally entered upon the minutes in open court. Certainly, the convention was deeply concerned about jury requirements. (See 1 Debates and Proceedings, Cal. Const. Convention (Nov. 5, 1878) pp. 294-305.)

■ Accordingly, we hold that article I, section 16, requires that a stipulation to a jury of less than 12 be formally entered on the minutes in open court and that the failure to do so here was error.

We also hold, however, that defendant, by its express stipulation in chambers and by its ratification of a smaller jury by participation without objection in the trial, is estopped to raise the error.[2] It is settled law that where a party ratifies the stipulation or accepts the benefits of it, he will be estopped to deny it. (1 Witkin, Cal. Procedure (2d ed. 1971) Attorneys, § 129, pp. 140-141; see *Witaschek v. Witaschek* (1942) 56 Cal.App.2d 277, 283 [132 P.2d 600].)

### III

■ The remainder of Safeway's contentions—that the evidence was insufficient to establish it initiated or procured the prosecution of plaintiff, that the denial of the motion for nonsuit and the motion for a new trial were error, and that the court erred in refusing to instruct on the doctrine of independent investigation—are all premised on the claim that there was an independent investigation by police which superseded the accusations made by Papst and his assistant who were authorized by the corporation to institute criminal complaints. This is simply not so. The officer who signed the theft complaint against the plaintiff testified he based his belief of the commission of a crime on the statements made by Papst and his assistant and the presence of the carts in plain-

---

[2]We do not reach the issue whether an estoppel can occur by any conduct less than an express stipulation and ratification of the stipulation.

tiffs' warehouse. The prosecutor for the district attorney's office based his decision to file the complaint on the police reports which also contained the statements of Papst and his assistant. There can be no serious doubt that the test of defendant's active instrumentality in causing the prosecution was met. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 242, pp. 2522-2523.) Apart from Papst's representation that there was no current agreement between Safeway and the plaintiffs for the retention of the carts and the presence of the carts in plaintiffs' warehouse, the police discovered only that there had been a previous contract, that Mrs. Meder referred all questions to her attorney, that Louis W. Meder told Papst he was authorized to pick up the carts when they met at the warehouse on December 18, that neither plaintiffs nor their employee, Dale Kenyon, gave a statement to the police, and that a former business associate of plaintiffs' stated that there were no carts in the warehouse on December 12, 1973, and the Meders were law-abiding, Christian people. The police obviously and reasonably relied on Papst's representation to them. There was no independent investigation and the trial court's rulings on the motions and the proposed instruction were correct. ■ A party has no right to an instruction not supported by the evidence or by a properly drawn inference from the evidence. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 192, p. 3012.) Safeway's appeal must fail.

## IV

After judgment on the jury verdict was entered for plaintiff, Louis W. Meder, Safeway filed a memorandum of costs incurred in obtaining judgment on the pleadings in two causes of action in the original complaint. The list of costs included demurrer filing fees, a copy of the criminal trial transcript, the depositions of plaintiffs, Papst, Papst's assistant, and five police officers, photocopies of Pauline Meder's medical records, and subpoena fees for five police officers. Louis W. Meder's motion to tax costs and strike Safeway's memorandum was denied on April 19, 1978, and plaintiffs' appeal followed.

Plaintiffs do not challenge the propriety of the September 10, 1976, order deferring consideration of Safeway's costs after judgement on the pleadings, but contend the March 2, 1978, filing was too late under Code of Civil Procedure section 1033, which requires filing no later than 10 days after entry of judgment. We disagree.

■ Two judgments were entered in this case, one for Safeway as to a portion of the complaint, and one for the plaintiff, Louis W. Meder. Safeway did submit a cost bill after the first judgment and the court declined to consider it at that time. Resubmission within 10 days of the order would have been an idle act. Safeway did submit a cost bill nine days after the judgment which resolved the remaining issue in the case, and that filing was timely.

Plaintiffs also argue that since all of the items in Safeway's cost bill except the medical records were useful in preparing or trying the defense against Louis W. Meder's malicious prosecution cause, and since the issue was resolved against Safeway, it is unfair to allow Safeway reimbursement of expenses. No authority is cited for this contention but we have nevertheless considered it. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 425, 426, pp. 4391-4393.) The argument lacks merit.

■ The determination of items allowable as costs is largely a question within the discretion of the trial court. (*Von Goerlitz* v. *Turner* (1944) 65 Cal.App.2d 425, 432 [150 P.2d 278].) Filing fees, statutory fees for public officers and depositions taken in good faith are allowable costs in a matter resolved without a trial. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 101, p. 3257, § 103, p. 3258.) Safeway prevailed in the judgment on the pleadings and we find no abuse of discretion in the denial of the motions to tax and to strike.

The judgment awarding damages to plaintiff, Louis W. Meder, is affirmed. The judgment awarding costs to Safeway Stores, Inc., is affirmed. Each party is to bear its own costs.

Puglia, P. J., and Regan, J., concurred.

A petition for a rehearing was denied December 5, 1979, and the opinion was modified to read as printed above. The petition of defendant and appellant for a hearing by the Supreme Court was denied January 17, 1980.